## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS,
## EASTERN DIVISION

| | |
|---|---|
| JOSEPH J. GIACALONE, JR. ) | |
| ) | |
| Plaintiff, ) | **Case No.** _____ |
| ) | |
| v. ) | |
| ) | **FILED: MAY 08, 2008** |
| RESURRECTION MEDICAL CENTER and ) | **08CV2670    AEE** |
| ILLINOIS COLLECTION SERVICE, INC., ) | **JUDGE MAROVICH** |
| ) | **MAGISTRATE JUDGE COX** |
| Defendants. ) | |
| ) | |

### JOINT NOTICE OF REMOVAL

Defendants, Resurrection Medical Center ("Resurrection") and Illinois Collection

Service, Inc. ("ICS," and collectively with Resurrection, "Defendants"), by their undersigned

counsel, petition this Court pursuant to 28 U.S.C. §§ 1441 and 1446 for removal of the action

currently pending as Case No. 2008-L-002984 in the Circuit Court of Cook County, Illinois,

County Department, Law Division. In support of this petition, Defendants state as follows:

1.      This action is removable to this federal district court based upon federal

jurisdiction in that Plaintiff asserts causes of action for, *inter alia*, alleged violations of the Fair

Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* and the Fair Debt Collection Practices Act, 15

U.S.C. § 1692 *et seq.*

2.      On March 17, 2008, Plaintiff, Joseph J. Giacalone, Jr. ("Plaintiff") filed a

Complaint against Defendants asserting the following nine putative causes of action:

| | |
|---|---|
| Count I. | Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq.*; |
| Count II. | Violation of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/1 *et seq.*; |

| Count III. | Violation of the Federal Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*; |
| Count IV. | Defamation |
| Count V. | Tortious interference with prospective economic advantage; |
| Count VI. | Intentional infliction of emotional distress; |
| Count VII. | Negligent infliction of emotional distress; |
| Count VIII. | Fraud; and |
| Count IX. | Violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* |

3.      ICS was served with Plaintiff's Complaint on April 9, 2008 and Resurrection was served on April 10, 2008. Accordingly, this Joint Notice of Removal is filed with this Court within thirty days of the date of service upon both ICS and Resurrection, as is required by 28 U.S.C. § 1446(b).

4.      In accordance with 28 U.S.C. § 1446(a), a copy of Plaintiff's Complaint and copies of all process, pleadings and orders filed with the Circuit Court of Cook County, Illinois, County Department, Law Division are attached hereto as **Exhibit A**.

5.      Pursuant to 28 U.S.C. § 1446(d), Defendants gave prompt written notice of this Joint Notice of Removal to Plaintiff and, simultaneous with the filing of this notice, filed a *Notice of Removal to Federal Court* with the Clerk of the Circuit Court of Cook County, County Department, Law Division.

6.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1441(a) because this action is pending in this district and division.

7.      As this notice is being filed jointly, all defendants agree to the removal of this action to this Court.

2

8. As Plaintiff asserts causes of action under the Federal Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, this Court has original jurisdiction pursuant to 28 U.S.C. § 1331.

9. This Court has supplemental jurisdiction over Plaintiff's remaining claims pursuant to 28 U.S.C. § 1367 because they are so related to the claims brought pursuant to federal statutes that they form part of the same case or controversy.

10. Therefore, this being a civil action over which the district courts of the United States have jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367, Defendants may remove this action to this Court pursuant to 28 U.S.C. § 1441.

WHEREFORE, Defendants, Resurrection Medical Center and Illinois Collection Service, Inc., respectfully request that the above-entitled action, currently pending as Case No. 2008-L-002984 in the Circuit Court of Cook County, Illinois, County Department, Law Division, be removed to this Court.

Dated: May 8, 2008

Respectfully submitted,

| | |
|---|---|
| Edwin E. Brooks | David M. Schultz |
| Steven D. Hamilton | Stephen D. Vernon |
| MCGUIREWOODS LLP | HINSHAW & CULBERTSON LLP |
| 77 West Wacker Drive, Suite 4100 | 222 North LaSalle Street, Suite 300 |
| Chicago, IL 60601 | Chicago, Illinois 60601 |
| (t) 312-849-8100 | (t) 312-704-3000 |
| (f) 312-849-3690 | (f) 312-704-3001 |
| | |
| *Attorneys for Resurrection Medical Center* | Attorneys for Illinois Collection Service, Inc. |

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2008, I caused a copy of the foregoing *Joint Notice of Removal* to be filed with the Court's electronic filing system. Parties may access this document through that system. Additionally, I hereby certify that I caused copy of the same to be served via First Class U.S. Mail, postage prepaid, at 77 West Wacker Drive, Suite 4100, Chicago, IL 60601, upon the following people:

Joseph J. Giacalone<br>
Giacalone & Associates, LLC<br>
4304 N. Osceola Ave.<br>
Norridge, IL 60706

Steven D. Hamilton

\6247371.1

# Exhibit A

2120 - Served                2121 - Served
2220 - Not Served            2121 - Not Served
2320 - Served By Mail        2321 - Served By Mail
2420 - Served By Publication 2121 - Served By Publication

**RECEIVED**
APR 10 2008

SUMMONS          ALIAS - SUMMONS          CCG N001-10M-1-07-05 (

Fajo

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW                    DIVISION

(Name all parties)

Joseph J. Giacalone, Jr., Esquire

v.

Resurrection Medical Center and Illinois Collection Service,
Inc.

}

2008L002984
CALENDAR/ROOM T
TIME 00:00
Fraud

No. _____

*Please Serve:*
*Resurrection Medical*
*7435. W. Talcott*
*Chicago, IL 60631*

**SUMMONS**

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☐ Richard J. Daley Center, 50 W. Washington, Room _____, Chicago, Illinois 60602

☐ District 2 - Skokie           ☐ District 3 - Rolling Meadows      ☐ District 4 - Maywood
  5600 Old Orchard Rd.            2121 Euclid                          1500 Maybrook Ave.
  Skokie, IL 60077                Rolling Meadows, IL 60008            Maywood, IL 60153

☐ District 5 - Bridgeview        ☐ District 6 - Markham               ☐ Child Support
  10220 S. 76th Ave.              16501 S. Kedzie Pkwy.                28 North Clark St., Room 200
  Bridgeview, IL 60455           Markham, IL 60426                    Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after DOROTHY ____ ____

Atty. No.: 35789

Name: Joseph J. Giacalone, Esquire

Atty. for: Plaintiff

Address: 4304 N. Osceola

City/State/Zip: Norridge, IL 60706

Telephone: 847-707-9000

Service by Facsimile Transmission will be accepted at: _____

WITNESS, _____ MAR 17 2008

_____
Clerk of Court

Date of service: _____
(To be inserted by officer on copy left with defendant or other person)

_____
Area Code)   (Facsimile Telephone Number)

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

2120 - Served            2121 - Served
2220 - Not Served        2221 - Not Served
2320 - Served By Mail    2321 - Served By Mail
2420 - Served By Publication  2421 - Served By Publication

SUMMONS          ALIAS - SUMMONS          CCG N001-10M-1-07-05 (

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW                         DIVISION

(Name all parties)

Joseph J. Giacalone, Jr., Esquire

v.

Resurrection Medical Center and Illinois Collection Service.
Inc.

2008L002984
CALENDAR/ROOM T
TIME 00:00
Fraud

No. _____

*Please Serve:*
*Resurrection Medical*
*7435. W. Talcott*
*Chicago, IL 60631*

### SUMMONS

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case. a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☐ Richard J. Daley Center, 50 W. Washington, Room _____, Chicago, Illinois 60602

☐ District 2 - Skokie            ☐ District 3 - Rolling Meadows    ☐ District 4 - Maywood
   5600 Old Orchard Rd.             2121 Euclid                       1500 Maybrook Ave.
   Skokie. IL 60077                 Rolling Meadows. IL 60008         Maywood, IL 60153

☐ District 5 - Bridgeview        ☐ District 6 - Markham            ☐ Child Support
   10220 S. 76th Ave.              16501 S. Kedzie Pkwy.             28 North Clark St.. Room 200
   Bridgeview, IL 60455            Markham, IL 60426                 Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
IF YOU FAIL TO DO SO. A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service. with endorsement of service and fees. if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: 35789

Name: Joseph J. Giacalone. Esquire

Atty. for: Plaintiff

Address: 4304 N. Osceola

City/State/Zip: Norridge, IL 60706

Telephone: 847-707-9000

Service by Facsimile Transmission will be accepted at: _____

WITNESS. _____

**MAR 17 2008**

_____
Clerk of Court

Date of service _____
 ( To be inserted by officer on copy left with defendant
 or other person)

Area Code)  (Facsimile Telephone Number)

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

2429 - Served                    2121 - Served
2420 - Not Served                2221 - Not Served
1320 - Served By Mail            2321 - Served By Mail
2420 - Served By Publication     2421 - Served By Publication
SUMMONS                          ALIAS - SUMMONS              CCG N001-10M-1-07-05

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW                                      DIVISION

(Name all parties)
Joseph J. Giacalone, Jr., Esquire

                                                    2008L002984
                                                    CALENDAR/ROOM T
                                                    TIME 00100
                                                    Fraud
v.
                                          No. _____
Resurrection Medical Center and Illinois Collection Service,
Inc.

*Please Serve:*
*Illinois Collection Service*
*8231 185th Str.*
*Ste. 100*
*Tinley Park, IL 6048?*

SUMMONS

To each Defendant:

   YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is
hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the
following location:

   ❑ Richard J. Daley Center, 50 W. Washington, Room _____, Chicago, Illinois 60602

   ❑ District 2 - Skokie            ❑ District 3 - Rolling Meadows      ❑ District 4 - Maywood
      5600 Old Orchard Rd.             2121 Euclid                          1500 Maybrook Ave.
      Skokie, IL 60077                 Rolling Meadows, IL 60008            Maywood, IL 60153

   ❑ District 5 - Bridgeview        ❑ District 6 - Markham              ❑ Child Support
      10220 S. 76th Ave.               16501 S. Kedzie Pkwy.               28 North Clark St., Room 200
      Bridgeview, IL 60455             Markham, IL 60426                   Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF
REQUESTED IN THE COMPLAINT.

To the officer:

   This Summons must be returned by the officer or other person to whom it was given for service, with
endorsement of service and fees, if any, immediately after service.  If service cannot be made, this Summons shall
be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: 35789                            WITNESS,_____        MAR 17 2008

Name: Joseph J. Giacalone, Esquire

Atty. for: Plaintiff

Address: 4304 N. Osceola                    _____
                                            Date of service
City/State/Zip: Norridge, IL 60706          (to be inserted by officer on copy left with defendant or
                                            other person)
Telephone: 847-707-9000

Service by facsimile transmission will be accepted at: _____

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
# COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| Joseph J. Giacalone, Jr. Esq. | ) ) ) | 2008L002984 CALENDAR/ROOM T TIME 00:00 Fraud |
| Plaintiff, | ) ) | Case No. |
| vs. | ) ) | |
| Resurrection Medical Center, and Illinois Collection Service, Inc. Defendants. | ) ) ) ) ) | |

## VERIFIED COMPLAINT AT LAW

NOW COMES the plaintiff, JOSEPH J. GIACALONE, JR. an

attorney, (hereinafter "Plaintiff") appearing pro se, pleading

against the defendants, Resurrection Medical Center (hereinafter

"Resurrection") and Illinois Collection Service, Inc. (hereinafter

"ICS")(both collectively hereinafter as "Defendants") and claims

as follows:

## Allegations Common to All Counts

1.  The Plaintiff is an individual who resides in the County of

    Cook, State of Illinois.

1

2.  The defendant, Resurrection Medical Center, is a hospital whose principal place of business resides in the County of Cook, State of Illinois.

3.  The defendant, ICS, is a debt collection agency located in Tinley Park, Illinois.

4.  Plaintiff filed bankruptcy on April 7, 2005, invoking the Bankruptcy Court's automatic stay, thereby ordering creditor's collection methods to cease according to Section 362 of the Bankruptcy Code.

5.  In plaintiff's bankruptcy petition, Resurrection was listed in Schedule F as an unsecured creditor.

6.  On April 11, 2005, the U.S. Bankruptcy Court sent a Notice of Chapter & Bankruptcy case, Meeting of Creditors and Deadline, to Resurrection. Resurrection received it on or about April 13, 2005, as evidenced by the Bankruptcy Clerk's Certificate of Mailing.

7.   On April 19, 2005, Resurrection sent a collection letter to plaintiff for the date of service of March 9, 2005, demanding $1,143.59 in violation of the automatic stay.

8.   On May 15, 2005, Resurrection sent a collection letter to plaintiff for the date of service of March 9, 2007, demanding $417.45 in violation of the automatic stay.

9.   On July 8, 2005, in violation of the automatic stay, Resurrection placed plaintiff's account for $1,143.00 for collection with ICS.

10.   On July 18, 2005, ICS reported the false $1143.59 debt to the credit bureaus.  On August 17, 2007, Plaintiff spoke with an employee of ICS, Mary Ann Langley.  In said conversation, Ms. Langely gave this information to Plaintiff:  Ms Langley told Plaintiff that the $99.27 false account was turned over to Experian on June 20, 2007, and to Transunion on May 7, 2007.  These were false statements in two regards:

a. The $99.27 account appeared on the March 17, 2007, Transunion report, two months prior to when Ms. Langely claimed; and

b. In a September 18, 2007, letter from Colleen Ortiz, Customer Service Manager, Resurrection Healthcare, Ms. Ortiz stated that "Illinois Collection Service reported to Transunion at the time your [Plaintiff's] accounts were placed with them." If this is true:

   i. the $1,143 account was turned over to ICS and reported to Transunion in July of 2005;

   ii. The $2,138 account was turned over to ICS in February of 2006 and ICS reported the account to Transunion also in February of 2006; and

   iii. The $99.27 account was turned over to ICS and reported to Transunion on July 31, 2006.

11. On July 26, 2005, the Plaintiff's bankruptcy case was discharged. On July 29, 2005, the Bankruptcy Clerk mailed

the order of discharges to Defendants as evidenced by a Certificate of Mailing.

12.    On August 8, 2005, Resurrection placed the account with an amount due of $417.45 with ICS in violation of the discharge order.

13.    In approximately October of 2005, plaintiff informed Resurrection that their account had been discharged in Bankruptcy. Plaintiff faxed a copy of the discharge order to Resurrection.

14.    On March 30, 2006, despite Resurrection's and ICS's knowledge that plaintiff had filed bankruptcy and that the accounts had been discharged, ICS mailed a "Notice of Placement" (debt collection letter) to Plaintiff.  Shortly thereafter, Plaintiff was compelled to contact ICS informing them of the false and misleading representation.

15.    On April 27, 2006, despite Resurrection's and ICS's knowledge that plaintiff had filed bankruptcy and that the accounts had been discharged, ICS again mailed the debt collection letter to plaintiff. Shortly thereafter, Plaintiff was compelled to contact ICS

informing them of the false and misleading representations. Said letter falsely claimed that Plaintiff agreed to pay ICS $417.45 a month and $417.45 every month thereafter until the fictitious balance was paid off.

16.   On May 17, 2006, despite Resurrection's and ICS's knowledge that plaintiff had filed bankruptcy and that the account accounts had been discharged, ICS mailed the debt collection letter to plaintiff demanding payment for the third time. Shortly thereafter, Plaintiff was compelled to contact ICS informing them of the false and misleading representations.

17.   Resurrection billed plaintiff $2,138.35 on or about December 2005. This amount was a misrepresentation. Resurrection failed to contact plaintiff's insurance company, BlueCross Blueshield. Plaintiff informed resurrection that he did not owe $2,138.35 and that he was covered by insurance at the time of the hospital services. Despite this knowledge, Resurrection turned over the account to ICS who reported the false account to the credit

bureaus.  Plaintiff only became aware that this false account was

reported to the credit bureaus on or about March 20 of 2007.

Blue Cross Blueshield admitted on a September 19, 2007,

statement of benefits that the plaintiff did not owe Resurrection

$2,138.35.  After reconciling the insurance benefits, plaintiff owed

Resurrection only $273.71.

18.    On May 4, 2006, Resurrection sent a statement for $99.27 to

plaintiff regarding an April 13, 2006, service date.

19.    On July 5, 2006, Plaintiff paid Resurrection $881.97, an

amount exceeding the May 4, 2006 statement.  Resurrection never

credited Plaintiff's account for this payment.

20.    On July 11, 2007--also of critical import--is the following:

ICS contacted plaintiff concerning a $99.27 account incurred on

April 14, 2006, despite the fact that it had been paid.  As with

many of these legal violations, plaintiff was forced to contact ICS

and the hospital to clear up the false, distressing errors.

21.    On July 28, 2006, Resurrection negligently placed the $99.27

account for collection with ICS.  ICS then reported this paid

account to the credit bureaus. ICS updated the collection accounts with Transunion on May 7, 2007, and with Experian on June 20, 2007.

22.    On December 26, 2006, Plaintiff set up a payment plan whereby he agreed to pay Resurrection $50.00 a month. In line with the agreement reached on December 26, 2006, in good faith, and on a timely basis, Plaintiff made the following payments, which upon information and belief, exceeded what was owed:

a.    December 27, 2006, for $50;

c.    January 17, 2007, for $50;

d.    January 23, 2007, for $50;

e.    February 14 for $50.00;

f.    March 9, 2007 for $120.00 and $50.00;

g.    March 15, 2007 for $50;

h.    March 18 for $20.00;

i.    April 8, 2007 for $100.00 and $50.00;

j.    April 13, 2007, for $50;

k.    April 19, 2007, for $50;

l.   May 1, 2007, for $91.17;

m. May 11, 2007 for $50.00;

n.  May 16, 2007 for $25;

o.  May 22, 2007 for $50;

p.   June 10, 2007 for $46.00 and $100.00.

q.   June 15, 2007 for $48.88; and

m.  June 18, 2007 for $50.

23.   On June 9, 2007, Resurrection contacted Plaintiff by telephone.  The woman on the line demanded payment.  Plaintiff reiterated the December 26, 2006, agreement, urging the woman to check the notes in the computer system.  The woman identified the agreement.  Plaintiff asked her why she was contacting him, for he was current on all payments.

24.   Despite the agreement and Plaintiff's diligent payments to Resurrection, the hospital aggressively contacted Plaintiff after December 26, 2006, approximately half a dozen times by mail, voicemail messages and telephone calls demanding payment.

25.   On July 24, 2007, ICS mailed to Plaintiff a Notice of Placement letter regarding a bill for $66.99. The letter was sent despite the agreement Plaintiff had reached with Resurrection on December 26, 2006 to pay $50.00 a month. Said agreement was again confirmed by the woman on the phone on June 9, 2007. As with many of these illegal violations, Plaintiff again was forced to contact ICS and the hospital to clear up the critical and distressing errors, consuming Plaintiff's time, effort, energy and piece of mind.

26.   On August 21, 2007, Plaintiff spoke with Wendy Veach, an employee of ICS, and manager of plaintiff's accounts. She admitted (and confirmed this with Resurrection) that the $99.27 account had been paid in full and in fact there was an overpayment. She said that a letter of deletion would be issued to Plaintiff and that the account would be removed from the credit reports.

27.   On or about September 1, 2007, plaintiff had a conversation with, Ms Ford, an employee of Experian. She said that Experian

was in receipt of plaintiff's August 24, 2007, letter informing them of the false collection account on plaintiff's credit reports. She was unable to access the letter in the computer system. According to the conversation, Ms. Ford agreed to send plaintiff a full credit report.

28.    Ms. Ford indicated to plaintiff that each of the following accounts from Resurrection had appeared on plaintiff's credit report:

| Date of Service | Balance | Turned Over to Collection on | Hospital Account No. |
|---|---|---|---|
| March 9, 2005 | $1,143.59 | July 8, 2005 | 0506800006 |
| Nov. 25, 2005 | $2,138.35 | Feb. 24, 2006 | 052900011 |
| April 13, 2006 | $99.27 | July 28, 2006 | C0610300433 |

Ms Ford told plaintiff that the only information available to plaintiff regarding these accounts was: when the accounts became delinquent; when they were turned over to collection; and that they were deleted by the original creditor, Resurrection hospital.  Ms Ford did not give plaintiff the deletion dates.  Plaintiff then spoke with Ms. Lewis.  She told plaintiff that the $99.27 account was on

11

the 9/4/07 report. She said the $1143.59 account and the $2138.35

account were not on this report. She said that between 9/4/07 and

9/12/07, the $99.27 account had been deleted. She informed

plaintiff that once ICS reported each of these three false accounts

to Experian, they immediately appeared on the credit report.

Plaintiff then said that Experian's inability to locate and disclose

this information was distressing.

## COUNT I: VIOLATIONS OF CONSUMER FRAUD ACT

29.    Plaintiff incorporates paragraphs 1-28 above into this Count

I.

30.    Section 2 of the Illinois Consumer Fraud Act provides:

"Unfair methods of competition and unfair or deceptive acts
or practices, including but not limited to the use or employment of
any deception, fraud, false pretense, false promise,
misrepresentation or the concealment, suppression or omission of
any material fact, with intent that others rely upon the
concealment, suppression or omission of such material fact, or the
use or employment of any practice described in Section 2 of the

'Uniform Deceptive Trade Practices Act', approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act." 815 ILCS 505/2 (West 2004).

31.    To state a cause of action under the Consumer Fraud Act, a plaintiff must plead (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; and (3) that the deception occurred in the course of trade or commerce. Robinson, 315 Ill. App. 3d at 1095, 735 N.E.2d at 732.

32.    A plaintiff may allege that conduct is unfair under the Consumer Fraud Act without alleging that the conduct is deceptive. Saunders v. Michigan Avenue National Bank, 278 Ill. App. 3d 307, 662 N.E.2d 602 (1996). To be unfair, the defendant's conduct must (1) offend public policy; (2) be so oppressive that the consumer has little alternative but to submit; and (3) cause consumers substantial injury. Saunders, 278 Ill. App. 3d at 313, 662 N.E.2d at 608.

33.    Defendants were purposely involved in the following deceptive acts:

a.    Resurrection sent invoices statements on April 19, 2005, and May 15, 2005, demanding $417.45, to Plaintiff in violations of Section 362 of the Bankruptcy Code.

b.    ICS made three demands for payment after the account had been discharged.

c. On July 8, 2005, Resurrection put in collection an account for $1,443, incurred on March 9, 2005, with ICS.  ICS published the account with the credit companies thereby falsely representing an account in collection when collection methods were stayed in the bankruptcy court.  Further, on or about July 28, 2005, Resurrection was notified that the account had been discharged in bankruptcy.  Nevertheless, Resurrection made no effort to correct its fraud.

d. On April 13, 2006, Plaintiff incurred a debt for $99.27 with Resurrection.  On July 5, 2006, Plaintiff paid this account in full.  On July 31, 2006, despite a payment significantly

14

greater than the $99.27 owed (of $782.97), Resurrection

placed the false account for collection. ICS then reported the

collection account to the credit bureaus. ICS then verified

the account with Transunion on May 7, 2007, and with

Experian on June 20, 2007, thereby damaging plaintiff's

good name in the mind of numerous financial institutions.

e. On June 9, 2007, Plaintiff and Resurrection reconfirmed that

Plaintiff was to continue to pay Resurrection $50 a month as per

an agreement reached December 26, 2006. In good faith and as

evidence of the agreement, on June 10, 2007, Plaintiff paid the

hospital in two checks totaling $146.00--more than covering the

$66.99 owed (the bill which was incurred on March 13, 2007).

Resurrection published with ICS the debt for $66.99 on July 2,

2007, thereby misrepresenting a past due account. Upon

information and belief, ICS published this paid account with the

credit bureaus. As with many of these legal violations, plaintiff

again was forced to contact ICS and the hospital to clear up the

critical and distressing errors, consuming plaintiffs time, effort, energy and piece of mind.

34.    The Defendants intended that the Plaintiff rely on the deceptions.  Resurrection intended that Plaintiff pay it money despite the fact that Plaintiff was under no obligation to pay Resurrection because of the bankruptcy court's automatic stay. ICS intended that the Plaintiff rely on its deceptions.  ICS made three fraudulent demands for money.  ICS intended the Plaintiff to rely on these misrepresentations and pay it money.  These unfair and deceptive trade practices were made despite the fact that the debt had been discharged in bankruptcy.

35.    The placement of false accounts with collection thereby causing the erroneous accounts to appear on Plaintiff's credit reports were deceptive, fraudulent, and unfair collection methods.

36.    The frauds occurred in the course of commerce.  Demand letters, demand phone calls, and reports to credit companies are business practices occurring in the ordinary course of commerce.

37.    The Defendants' conduct was unfair because they falsely reported good accounts to credit companies defaming his good name, repeatedly harassed Plaintiff with fraudulent and unnecessary debt collect letters, harassed plaintiff on the phone when accounts had been paid or were on a payment plan, and violated Bankruptcy and FDCPA laws.

38.    Defendants' conduct of pursuing debt collection methods in the face of clear violations of Bankruptcy laws offends public policy.  As a general matter in society, all persons must follow the laws, including bankruptcy laws.

39.    Defendants fraudulent reporting of false information also offends public policy.  Consumer credit reports play a key role in a person's ability to advance financially in society.  It is fair and equitable for misrepresentations on one's credit report be cleared up in a responsible manner.

40.    Defendant's methods were so oppressive that the Plaintiff had little alternative but to submit.  The methods caused great

distress and caused Plaintiff to make great efforts in explaining the frauds.

41.     The deceptive acts caused the Plaintiff substantial injury including:  loss of credit, refusal to extend credit to the Plaintiff, an impaired good name and reputation, injuries to Plaintiff's psyche, emotional distress, severe blows to Plaintiff's self-worth and self-confidence, and humiliation and embarrassment every time Plaintiff was rejected for credit.

WHEREFORE, Plaintiff Joseph J. Giacalone, Jr. requests judgment be entered in his favor and against Defendants, Resurrection Medical Center, Inc. and Illinois Collection Service, Inc. for:

a.     Actual damages;

b.     Punitive damages;

c.     Costs, litigation expenses, and attorneys' fees; and

d.     Such other relief as the Court may determine to be proper.

18

## COUNT II:  VIOLATIONS OF THE UNIFROM

## DECEPTIVE TRADE PRACTICES

42.   Plaintiff realleges paragraphs 1-41 above into this count II.

43.   The Uniform Deceptive Trade practices Act, 815 ILCS

510/2(a)(8) and (12) states:

Deceptive trade practices.  A person engages in a deceptive trade
practice when, in the course of his or her business, vocation or
occupation, the person:...(8) disparages the goods, services or
business of another by false or misleading representations of
fact...(12) engages in any other conduct which similarly creates a
likelihood of confusion or misunderstanding.

44.   Resurrection made false statements concerning an account

for $1,143, incurred on March 9, 2005.  Resurrection put the

misleading accounts in collection with ICS on July 8, 2005.  ICS

then published the account with the credit companies, thereby

19

falsely representing an account in collection when it had been

discharged in bankruptcy.

45.   Defendant made misleading representations of fact

concerning an account incurred on March 9, 2005 for $417.45.

The account was turned over to collection and published to ICS,

despite the fact that this debt was discharged in bankruptcy.  ICS

mailed three letters to Plaintiff after the bankruptcy discharge

causing Plaintiff confusion, grief and distress.  The conduct created

great misunderstanding because the repetitive and harassing letters

demanded payment of a discharged debt.

46.On July 31, 2006, despite a payment significantly greater than

the $99.27 owed (of $782.97), Resurrection placed a false account

for collection with ICS.   ICS published the paid account with

Transunion on May 7, 2007, and with Experian on June 20, 2007,

thereby misleading financial institutions considering the extension

of credit to Plaintiff and damaging Plaintiff's good name in the

mind of numerous financial institutions.

47. On June 9, 2007, Plaintiff and Resurrection reconfirmed that
Plaintiff was to continue to pay Resurrection $50 a month.
In good faith and as evidence of the agreement, on June 10,
2007, Plaintiff paid the hospital in two checks totaling
$146.00 more than covering the $66.99 bill, which was
incurred on March 13, 2007.  Resurrection published with
ICS the debt for $66.99 on July 2, 2007, thereby engaging in
conduct, which created a likelihood of confusion and
misunderstanding. The placement of false accounts with
collection were false and misleading representations of fact
in violation of the Uniform Deceptive Practices Act.

48.    The Defendants' conduct in falsely reporting invalid accounts
to the credit bureaus and in pursuing discharged debts, proximately
caused the following damages:  loss of credit, refusal to extend
credit to the Plaintiff, higher interest rates on credit cards, an
impaired good name and reputation, emotional distress, severe
blows to Plaintiff's self-worth and self-confidence, and humiliation
and embarrassment every time Plaintiff was rejected for credit.

WHEREFORE, Plaintiff, Joseph J. Giacalone, Jr., requests

judgment be entered in his favor and against Defendants,

Resurrection Medical Center, Inc. and Illinois Collection Service,

Inc. for:

      a.    Actual damages;

      b.    Punitive damages;

      c.    Costs, litigation expenses, and attorneys' fees; and

      d.    Such other relief as the Court may determine to be

proper.

## COUNT III:  FAIR CREDIT REPORTING ACT

## VIOLATION

49.   This count incorporates paragraphs 1-48  above.

50.   The Fair Credit Reporting Act states in regards to furnishers:

§ 623. Responsibilities of furnishers of information to consumer
reporting agencies [15 U.S.C. § 1681s-2]
(a) Duty of Furnishers of Information to Provide Accurate

Information
(1) Prohibition
(A) Reporting information with actual knowledge of errors. A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate.

51.   Resurrection reported false information to ICS and the credit

bureaus.

52.   Resurrection is a furnisher.

53. Resurrection committed such violations willfully or

negligently, thereby violating 15 U.S.C. §1681n and §1681o.

54. Section 1681n provides:

§1681n. Civil liability for willful noncompliance (a) In general.
Any person who willfully fails to comply with any
Requirement imposed under this title with respect to any consumer
is liable to that consumer in an amount equal to the sum of-
(1) (A) any actual damages sustained by the consumer as a result
of the failure or damages of not less than $100 and not more
than $1,000; or
(2) such amount of punitive damages as the court may allow; and
(3) in the case of any successful action to enforce any liability
under this section, the costs of the action together with reasonable
attorney's fees as determined by the court. . . .

55. Section 1681o provides:

§1681o. Civil liability for negligent noncompliance
(a) In general. Any person who is negligent in failing to comply

with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of--

(1) any actual damages sustained by the consumer as a result of the failure;

(2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

56. Section 1681p provides:

§1681p. Jurisdiction of courts; limitation of actions
An action to enforce any liability created under this title may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within two years
from the date on which the liability arises, except that where a defendant has materially and willfully misrepresented any information required under this title to be disclosed to an individual and the information so misrepresented is
material to the establishment of the defendant's liability to that individual under this title, the action may be brought at any time within two years after discovery by the individual of the misrepresentation.

57. Plaintiff was damaged as a result of defendant's violations, in

that he has:

(a) suffered great annoyance and inconvenience, (b) been deprived

of credit, (c) had unfavorable terms in credit offers and (d) been

compelled to spend time and money removing the false

information from his credit history.

WHEREFORE, plaintiff requests that the Court enter judgment in her favor and against Resurrection for:

(1) Appropriate actual, punitive and statutory damages;

(2) Attorney's fees, litigation expenses and costs of suit;

(3) Such other or further relief as the Court deems proper.

## COUNT IV: DEFAMATION OF CHARACTER

58.   Plaintiff re-alleged paragraphs 1-57 above into this Count IV.

59.   The Defendants maliciously and wrongfully contrived to destroy the Plaintiff's good name, reputation, and credit by causing collections accounts to appear on Plaintiff's credit reports when the Defendants knew or should have known that collection efforts were: a)    unlawful and stayed and discharged by the bankruptcy

court; b)    not reconciled with plaintiff's insurance company and a false figure; and c)    paid.

60.  The Defendants made defamatory statements as outlined below which appeared on Plaintiff's credit report.

61. A defamatory statement consisted of an account with Resurrection for $1,143, incurred on March 9, 2005, which was put in collection with ICS on July 8, 2005 and then published with the credit companies. The fraudulent statement falsely represented an account in collection when the account was stayed in the bankruptcy court.  Further, on or about July 28, 2005, Resurrection was notified that the account had been discharged in bankruptcy.  Nevertheless, Resurrection made no effort to correct its fraud with ICS or the credit companies.

62. Defamatory statements consisted of an account incurred on March 9, 2005, for $417.45, which was turned over to collection and published to ICS, despite the fact that this debt was discharged in bankruptcy.

63. Defamatory statements that $2138 was owed when the account had not been reconciled with the insurance company.

64. A Defamatory statement consisted of an account, which was incurred on April 13, 2006, for $99.27. On July 5, 2006, Plaintiff paid this account in full. On July 31, 2006, despite a payment significantly greater than the $99.27 owed (of $782.97), Resurrection placed the defamatory account for collection with ICS. ICS published the account with the credit bureaus on July 31, 2006. ICS reaffirmed the debt and contacted Transunion on May 7, 2007, and Experian on June 20, 2007. The false accounts thereby damaged plaintiff's good name in the mind of numerous financial institutions.

65. On June 9, 2007, plaintiff and Resurrection reconfirmed that Plaintiff was to continue to pay Resurrection $50 a month. In good faith and as evidence of the agreement, on June 10, 2007, Plaintiff paid the hospital in two checks totaling $146.00 more than covering the $66.99 bill, which was incurred on March 13, 2007.

Resurrection published with ICS the debt for $66.99 on July 2, 2007 thereby defaming plaintiff's good name.  Upon information and belief, ICS published this paid account with the credit bureaus.

66.    As with many of these illegal violations, Plaintiff again was forced to contact ICS and the hospital to clear up the critical and distressing errors, consuming Plaintiffs time, effort, energy and piece of mind.

67.    The Defendants knew or should have known that said statements were false.

68.  Said defamatory and false statements were published to several third parties including but not limited to the collection agency, ICS, the three credit bureaus, and a number of financial institutions who viewed Plaintiff's credit report in their decisions to extend credit.

69.    The placement of false accounts with collection thereby causing the erroneous accounts to appear on Plaintiff's credit reports were harassing, premature, purposeful, lawless, and overly-aggressive collection methods that defamed Plaintiff's character.

70.    The defamatory statements proximately caused the following damages:  loss of credit, refusal to extend credit to the plaintiff, an impaired good name and reputation, injuries to plaintiff's psyche, emotional distress, severe blows to plaintiff's self-worth and self-confidence, and humiliation and embarrassment every time plaintiff was rejected for credit.

WHEREFORE, Plaintiff, Joseph J. Giacalone, Jr., requests judgment be entered in his favor and against Defendants, Resurrection Medical Center, Inc. and Illinois Collection Service, Inc. for:

      a.    Actual damages;

      b.    Punitive damages;

      c.    Costs, litigation expenses, and attorneys' fees; and

      d.    Such other relief as the Court may determine to be proper.

## COUNT V:  INTENTIONAL INTERFERENCE WITH

## PROSPECTIVE ECONOMIC ADVANTAGE

71.    Plaintiff realleges paragraphs 1-70 above into this Count V.

72.    Plaintiff had a reasonable expectancy of entering into valid business relationships with many financial institutions that extend credit to consumers.

73.    The Defendants had knowledge of the expectancy of future business because it is familiar with business practices whereby financial institutions review credit reports before extending credit to customers.  Further, Defendants understood the effect of bad financial consequences including but not limited to refusals to extend credit, as a result of negative information on a credit report.

74.    There was an intentional and unjustified interference by the Defendants that induced or caused a breach or termination of the expectancy, because Defendants:

    a.  Falsely reported an account for $1,143, as in collection when it had been discharged in bankruptcy; and

    b.  Falsely reported an account for $2,138.35, as in collection when the bill had not been reconciled with plaintiff's health insurer, BlueCross BlueSield. Plaintiff was insured at the time of service.  He was never billed the correct amount of approximately $365.00.  The defendants reported the false account to the credit bureaus; and

    c.  Placed an account for $99.27 for collection with ICS when it had been paid. ICS then reported the false account with the credit bureaus thereby interfering with plaintiff's reasonable expectations with business relationships with the financial institutions.

75.    The placement of false accounts with collection and on credit reports were intentional and unjustified interference with Plaintiff's financial affairs.

76.    The Defendants' conduct in falsely reporting invalid accounts to the credit bureaus proximately caused the following damages: loss of credit, refusal to extend credit to the plaintiff, bad credit terms, an impaired good name and reputation, emotional distress, severe blows to plaintiff's self-worth and self-confidence, and humiliation and embarrassment every time plaintiff was rejected for credit.

WHEREFORE, Plaintiff, Joseph J. Giacalone, Jr., requests judgment be entered in his favor and against Defendants, Resurrection Medical Center, Inc. and Illinois Collection Service, Inc. for:

      a.    Actual damages of $50,000.00;

      b.    Punitive damages of $500,000.00;

      c.    Costs, litigation expenses, and attorneys' fees; and

d.    Such other relief as the Court may determine to be

proper.

## COUNT VI: INTENTIAL INFLICTION OF

## EMOTIONAL DISTRESS

77.    This Count incorporates paragraphs 1-76 above.

78. Defendants intentionally engaged in outrageous and extreme behavior in their efforts to collect hospital debts with reckless disregard for the law. The intent is evidenced by persistence harassment and purpose and forethought in exerting pressure on Plaintiff.

79. The outrageous and extreme behavior consisted of the following:

a. Unreasonable, overly aggressive, atrocious, harassing, obnoxious and malicious conduct in bill collection techniques; and

b. Uneven leverage, resources and money of the creditor Resurrection as compared to the Plaintiff, the debtor; the disparity in power unfairly caused distress.

c. Lawless persistence in collecting debts _after_ the imposed stay and discharge of the bankruptcy case;

d. A continuance of outrageous debt collection methods and unjustified turnovers to the collection agency, ICS, who then reported the false accounts to the credit bureaus.

80. There is a causal connection between Defendants' wrongful conduct and Plaintiff's emotional distress.

81. Plaintiff suffered and continues to suffer severe emotional distress in the forms of: anxiety; mania at times; racing thoughts, negative thoughts; worrying; suicidal thoughts; loss of appetite; loss of interest in hobbies and physical exercise; aggravation; fits of extreme anger; headaches; the need to consult doctors and frequent adjustments to medication.

WHEREFORE, Plaintiff, Joseph J. Giacalone, Jr. prays for the following relief:

     i.    Actual damages in the amount of $25,000.00;

    ii.    Consequential damages in the amount of $25,000.00;

   iii.    Punitive damages in the amount of $250,000.00;

   iv.    For costs of suit and attorneys' fees incurred in litigating this matter;

    v.    For such further relief as this court deems just and equitable.

## COUNT VII:  NEGLIGENT INFLICTION OF

## EMOTIONAL DISTRESS

82.    Plaintiff incorporates paragraphs 1-81 above into this Count VII.

83.  The Defendants, in collusion, engaged in unfair and unconscionable debt collection procedures.  They harassed Plaintiff by phone and mail, and made false and misleading representations about amounts due. Defendants violated bankruptcy laws in pursuing debt collection activities after the filing of the bankruptcy case and after the discharge of the debts. They violated the Consumer Fraud and Deceptive Trade Practices Act in misrepresenting amounts due.  They committed fraud in inducing plaintiff to pay more money than owed, and forced him to pay more money than agreed upon.  They engaged in negligent conduct that they knew or should have known involved an

unreasonable risk of causing emotional distress to Plaintiff.

84. The emotional distress that resulted from the defendants' conduct of unreasonable, unfair, unethical, and unprofessional acts was the proximate cause of Plaintiff's emotional distress.

85. Plaintiff's distress was severe emotional distress. Plaintiff suffered and continues to suffer severe emotional distress in the forms of: anxiety; mania at times; racing thoughts, negative thoughts; worrying; suicidal thoughts; loss of appetite; loss of interest in hobbies and physical exercise; aggravation; fits of extreme anger; and headaches.

WHEREFORE, Plaintiff, Joseph J. Giacalone, Jr. prays for the following relief:

  i.  Actual damages in the amount of $25,000.00;

  ii.  Consequential damages in the amount of $25,000.00;

  iii.  Punitive damages in the amount of $250,000.00;

iv.    For costs of suit and attorneys' fees incurred in
       litigating this matter; and

v.     For such further relief as this court deems just and
       equitable.

## COUNT VIII:  FRAUD BY RESURRECTION

86.    Plaintiff realleges paragraphs 1–85 above into this Count
VIII.

87.    Defendants made false representations of material fact
regarding Plaintiff's payment history to the credit bureaus and
numerous financial institutions in reporting the following false and
misleading information: a $99.27 account which had been paid.

88.    Defendants had knowledge that its report to the credit bureaus
of the $99.27 account was false because it received full payment
on July 5, 2006.  On July 5, 2006, plaintiff paid Resurrection
$881.97 by check.  Plaintiff owed Resurrection $365.25 for a

November 2005 bill and $99.27 for a 2006 bill, for a total of $464.52.  Plaintiff overpaid Resurrection by $417.45.

89.    Resurrection had knowledge the representations they made to Plaintiff on July 5, 2006 that $881.97 was due was false.  On July 5, 2006 plaintiff had a conversation with an employee of Resurrection.  She informed him that $881.97 was due.  In fact, Resurrection billed plaintiff for $417.45 numerous times after the debt had been stayed and then discharged in bankruptcy.

90.    Resurrection's conduct induced reliance of plaintiff upon the false representations that he owed $881.97.

91.    Plaintiff justifiably relied upon the misrepresentations in forwarding more money to the hospital than he owed.

92.    This paid account was unjustifiably reported to the collection bureaus as in collection.  This false collection account was reported to numerous financial institutions who viewed plaintiff's credit reports.

93.Resurrection's misrepresentations regarding amounts due proximately caused the following damages:  an overpayment

of $417.45; loss of credit and rejections of credit when the fraudulent but paid bills were reported to credit companies; injuries to Plaintiff's psyche; emotional distress; severe blows to plaintiff's self-worth and self-confidence, and humiliation and embarrassment every time Plaintiff was rejected for credit.

WHEREFORE, Plaintiff Joseph J. Giacalone, Jr., requests judgment be entered in his favor and against Defendant, Resurrection Medical Center, Inc. for:

    a.    Actual damages of $417.45;

    b.    Consequential damages of $25,000.00 in loss of credit and offers of higher credit rates;

    b.    Punitive damages of $100.000.00;

    c.    Costs, litigation expenses, and attorneys' fees; and

    d.    Such other relief as the Court may deem just and equitable.

## COUNT IX:  ILLINOIS COLLECTION SERVICE'S

## VIOLATION OF FAIR DEBT COLLECTION REPORTING

## ACT

94.    This count incorporates paragraphs 1-93 above herein.

95.    The Fair Debt Collection Reporting Act (hereinafter referred

to as the "FDCPA"), states as follows:

806.  Harassment or abuse  [15 USC 1692d]

A debt collector may not engage in any conduct the natural
consequence of which is to harass, oppress, or abuse any person in
connection with the collection of a debt. Without limiting the
general application of the foregoing, the following conduct is a
violation of this section:
…

   (5) Causing a telephone to ring or engaging any person in
telephone conversation repeatedly or continuously with intent to
annoy, abuse, or harass any person at the called number.

§ 807.  False or misleading representations  [15 USC 1692e]

A debt collector may not use any false, deceptive, or misleading
representation or means in connection with the collection of any
debt. Without limiting the general application of the foregoing, the
following conduct is a violation of this section: …

41

(2) The false representation of --

    (A) the character, amount, or legal status of any debt; or

...

    (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed...

    (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

## § 808.  Unfair practices [15 USC 1692f]

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. use his business name if such name does not indicate that he is in the debt collection business.

...

## § 813.  Civil liability  [15 USC 1692k]

(a) Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this title with respect to any person is liable to such person in an amount equal to the sum of --

    (1) any actual damage sustained by such person as a result of such failure;

    (2) (A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or

(B) in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; and

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.

(b) In determining the amount of liability in any action under subsection (a), the court shall consider, among other relevant factors --

(1) in any individual action under subsection (a)(2)(A), the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional; or

(2) in any class action under subsection (a)(2)(B), the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the resources of the debt collector, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional.

(c) A debt collector may not be held liable in any action brought under this title if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

(d) An action to enforce any liability created by this title may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs.

(e) No provision of this section imposing any liability shall apply to any act done or omitted in good faith in conformity with any advisory opinion of the Commission, notwithstanding that after such act or omission has occurred, such opinion is amended, rescinded, or determined by judicial or other authority to be invalid for any reason.

96. On July 26, 2005, the Plaintiff's bankruptcy case was discharged.

97. On August 8, 2005, despite Resurrection's and ICS's knowledge that plaintiff had filed bankruptcy and that the account (bill) of $417.45 had been discharged, the hospital placed the account for collection with ICS. ICS mailed the debt collection letter to plaintiff on March 30, 2006. Shortly thereafter, Plaintiff was compelled to contact ICS and Resurrection informing them of the false and misleading representations of the demand letter which mischaracterized the debt as a valid legal debt when in reality it was a

discharged debt in violation of Section 807(2)(A) and 807(10) of the FDCPA. The false misrepresentations were unfair practices attempting to induce Plaintiff to pay a discharged debt in violation of Section 808 of the FDCPA.

98. On April 27, 2006, despite Resurrection's and ICS's knowledge that plaintiff had filed bankruptcy and that the account (bill) of $417.45 had been discharged, ICS again mailed the debt collection letter to plaintiff in what can be characterized as harassment and abuse in violation of Section 806. Shortly thereafter, Plaintiff, distressed by the illegal demand for money, was compelled to contact ICS informing them of the false and misleading representations.

99. The April 27, 2006, demand letter from ICS falsely stated that plaintiff agreed to pay: A.   $417.45 on or before 5/5/06; and B.   $417.45 every thereafter until the balance of the total amount due is paid in full. ICS falsely represented an agreement with plaintiff in violation of Section 807(10). Plaintiff never agreed to these terms. Plaintiff did not agree

to these terms because he was well aware that this debt was discharged in bankruptcy.

100.    On May 17, 2006, despite Resurrection's and ICS's knowledge that plaintiff had filed bankruptcy and that the account (bill) of $417.45 had been discharged, ICS, for the third time, mailed the debt collection letter to plaintiff demanding payment. Plaintiff never agreed to these terms. This letter falsely represents an amount due, an amount, which had been discharged in bankruptcy. ICS's behavior exhibited the following:

   a. Harassment and oppression in demanding a discharged debt thrice times in violation of Section 806 of the FCRA; and

   b. Misleading plaintiff that the debt was legal in violation of Section 807 (2)(A) and (10) of the FCRA.

101. On December 26, 2006, Plaintiff set up a payment plan whereby he agreed to pay Resurrection $50.00 a month. Despite the agreement and Plaintiff's diligent payments to pay

Resurrection, on July 11, 2007--also of critical import--ICS

contacted plaintiff concerning a $99.27 account incurred on April

14, 2006.  The letter was an attempt to harass Plaintiff to collect a

debt in violation of Section 806 of the Bankruptcy Code. Said

Notice of Placement falsely characterized an amount due of $99.27

in an attempt to mislead plaintiff in violation of Section 807, when

Plaintiff had just made payments of $46.00 and $100.00 on June

10, 2007.  As with many of these unfair and unconscionable

collection techniques in violation of Section 808 Unfair Practices,

plaintiff again was forced to contact ICS and the hospital to clear

up the critical and distressing errors, consuming plaintiff's time,

effort, energy and piece of mind.

102.  ICS pursued collection efforts on two erroneous accounts

with intent to harass plaintiff.

WHEREFORE, Plaintiff, Joseph J. Giacalone, Jr., requests judgment be entered in his favor and against Defendant, Illinois Collection Service, Inc. for:

    a.    Actual damages;

    b.    Punitive damages;

    c.    Costs, litigation expenses, and attorneys' fees; and

    d.    Such other relief as the Court may determine to be proper.

48

Respectfully Submitted,

By: _____
Joseph J. Giacalone, Jr., Esquire

Joseph J. Giacalone, Jr. Esq.
Giacalone & Associates, LLC
4304 North Osceola Avenue
Norridge, IL 60706
Phone:  847-707-9000
Attorney No. 35789

## VERIFICATION OF BY CERTIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

_____
Joseph J. Giacalone, Jr., Esq.

49

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JOSEPH J. GIACALONE, JR. | ) |
| | ) |
| Plaintiff, | ) |
| | )    Case No. _____ |
| v. | ) |
| | ) |
| RESURRECTION MEDICAL CENTER and | )    **FILED: MAY 08, 2008** |
| ILLINOIS COLLECTION SERVICE, INC., | )    **08CV2670    AEE** |
| | )    **JUDGE MAROVICH** |
| Defendants. | )    **MAGISTRATE JUDGE COX** |
| | ) |

**NOTICE OF FILING**

**To:**    Joseph J. Giacalone
Giacalone & Associates, LLC
4304 N. Osceola Ave.
Norridge, IL 60706

**PLEASE TAKE NOTICE** that Defendants, Resurrection Medical Center and Illinois Collection Service, Inc., filed their *Joint Notice of Removal* with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, a true and correct copy of which is hereby served upon you.

Dated: May 8, 2008

Edwin E. Brooks
Steven D. Hamilton
MCGUIREWOODS LLP
77 West Wacker Drive, Suite 4100
Chicago, IL 60601
(t) 312-849-8100
(f) 312-849-3690

*Attorneys for Resurrection Medical Center*

David M. Schultz
Stephen D. Vernon
HINSHAW & CULBERTSON LLP
222 North LaSalle Street, Suite 300
Chicago, Illinois 60601
(t) 312-704-3000
(f) 312-704-3001

Attorneys for Illinois Collection Service, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2008, I caused a copy of the foregoing *Notice of Filing* to be filed with the Court's electronic filing system. Parties may access this document through that system. Additionally, I hereby certify that I caused copy of the same to be served via First Class U.S. Mail, postage prepaid, at 77 West Wacker Drive, Suite 4100, Chicago, IL 60601, upon the following people:

Joseph J. Giacalone
Giacalone & Associates, LLC
4304 N. Osceola Ave.
Norridge, IL 60706

Steven D. Hamilton

\6247615.1

2