IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEPH J. GIACALONE, JR. | ) |
|                 Plaintiffs, | ) No. 08 CV 2670 |
| v. | ) |
| | ) Judge Marovich |
| RESURRECTION MEDICAL CENTER AND ILLINOIS COLLECTION SERVICES, INC., | ) |
|                 Defendants. | ) |

**ICS'S RULE 12(b)(6) MOTION TO DISMISS**

NOW COMES Defendant, ILLINOIS COLLECTION SERVICES, INC. ("ICS"), by and through its attorneys, David M. Schultz and Stephen D. Vernon, and moves to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and in support thereof, states the following:

### I.   INTRODUCTION

The Complaint of Plaintiff, Joseph J. Giacalone, Jr.,[1] alleges that between July 8, 2005 and July 24, 2007 ICS attempted to collect five debts on behalf of Defendant Resurrection Medical Center ("Resurrection") that Plaintiff had incurred for medical services. While Plaintiff does not deny incurring the charges ICS sought to collect, Plaintiff contends that two of the debts were discharged in bankruptcy and that he had entered into a payment arrangement with Resurrection with respect to the other three debts. Based on conduct that allegedly occured between those dates, Plaintiff claims that ICS violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA"), defamed him, intentionally interefered with his prospective economic advantage,

---

[1] Plaintiff is an Illinois attorney proceeding *pro se* in this matter.

6330020v2 888206

intentionally inflicted emotional distress, negligently inflicted emotional distress and violated the Fair Debt Collection Practices Act ("FDCPA").

Initially, Plaintiff's ICFA claim requires dismissal as Plaintiff has failed to plead any actual damages suffered in reliance on any alleged misrepresentations. Similarly, Plaintiff's IUDTPA claim fails for at least two reasons: (1) there is no private right of action for money damages under the IUDTPA and (2) Plaintiff has not alleged any conduct by ICS within the scope of the IUDTPA. Plaintiff's common law claims for defamation, intentional interference with prospective economic advantage, intentional infliction of emotional distress and negligent infliction of emotional distress all fail because Plaintiff has not adequately alleged the necessary elements of each of those causes of action. Finally, in addition to the fact that many of the allegations Plaintiff's FDCPA claim involve conduct outside the applicable statute of limitations, that claim fails because the alleged conduct does not rise to the level of an FDCPA violation.[2] Accordingly, Plaintiff's Complaint should be dismissed in its entirety.

## II. THE ALLEGATIONS OF PLAINTIFF'S COMPLAINT

Plaintiff filed bankruptcy on April 7, 2005 and listed Defendant Resurrection as a Schedule F unsecured creditor in connection with services he received from Resurrection on March 9, 2005. Plaintiff's Complaint ("Pl. Cmp.") ¶4,5,7,8. Despite allegedly receiving notice of Plaintiff's pending bankruptcy, Plaintiff claims Resurrection placed two accounts for the March 9, 2005 services in the amount of $1,143.59 and $417.45 with ICS for collection on July 8, 2005 and then on August 5, 2005 respectively. *Id.* at ¶12. On July 26, 2005, Plaintiff's bankruptcy case was discharged and notice was allegedly mailed to Plaintiff's creditors on July 29, 2005. *Id.* at ¶11. While Plaintiff alleges that "Defendants" received notice of the discharge, an examination of the Certificate of Service attached to the bankruptcy court's Discharge Order

---

[2] ICS adopts and incorporates by reference Resurrection Medical Center's argument that Plaintiff's Complaint should be dismissed because it is prolix. Docket, No. 16 at p. 1. ICS also adopts and incorporates by reference Resurrection Medical Center's argument that Plaintiff's claims for punitive damages must be dismissed for Plaintiff's failure to allege that ICS acted with an evil motive and the other reasons articulated therein. Docket, No.

shows that ICS was never sent notice of that Order. *See id.*; *see also* U.S Bankruptcy Court for the Northern District of Illinois, Case No. 05-13251, Docket No. 14 at p. 3.[3] Plaintiff alleges that he received collection letters concerning the discharged accounts from ICS on March 30, 2006, April 27, 2006 and May 17, 2006. *Id.* at ¶¶14-16. Plaintiff alleges that he contacted ICS after he received each of the letters and informed ICS that the debts at issue had been discharged in bankruptcy. *Id.* Plaintiff does not attach the letters he claims to have received. *See generally* Pl. Cmp.

In December of 2005, Resurrection allegedly billed Plaintiff $2,318.35 for services rendered after his bankruptcy had been discharged and then turned that account over to ICS, who allegedly reported it the credit bureaus. *Id.* at ¶17. Plaintiff claims that he did not owe $2,318.35 but rather owed $273.71 after insurance. *Id.* Plaintiff does not allege that ICS knew that the amount of the debt Resurrection placed with it was in error. *See generally* Pl. Cmp.

On May 4, 2006, Resurrection allegedly sent Plaintiff a statement in the amount of $99.27 for services rendered on April 13, 2006. *Id.* at ¶18. On July 28, 2006, Resurrection allegedly placed this account with ICS. *Id.* at ¶21. On December 26, 2006, Plaintiff and Resurrection allegedly entered into a payment plan wherein Plaintiff agreed to pay Resurrection $50.00 per month. *Id.* at ¶22. Plaintiff does not allege that ICS was informed of this payment plan or otherwise informed of any payments made pursuant to that plan. *See generally* Pl. Cmp.

ICS allegedly contacted Plaintiff on July 11, 2007 regarding the $99.27 account and allegedly reported that account to the credit bureaus at that time and then again to Transunion on May 7, 2007 and Experian on June 20, 2007. 20-21. *Id.* at ¶¶20-21. On July 24, 2007, ICS

---

16 at pp. 14-15.

[3] A district court may take judicial notice of matters of public record, such as filings in bankruptcy court, without converting a Rule 12b(6) motion to dismiss into a motion for summary judgment. *Henson v. CSC Credit Services,* 29 F.3d 280, 284 (7th Cir. 1994) (judicial notice taken of earlier Indiana state court case in Fair Credit Reporting Act case); *Limestone Development Corp. v. Village of Lemont K.A.,* 473 F.Supp.2d 858, 867-68 (N.D.Ill. 2007) (previous state court litigation); *Kim v. Sara Lee Bakery Group, Inc.* 412 F.Supp.2d 929 (N.D.Ill. 2006) (court ruling in earlier N.D. Illinois case).

6330020v2 888206

allegedly mailed Plaintiff a "Notice of Placement" letter regarding another bill Plaintiff owed to Resurrection in the amount of $66.99. *Id.* at ¶25.

Based on these allegations, Plaintiff seeks recovery against ICS under seven theories: (1) the ICFA (¶¶29-41); (2) the IUDTPA (¶¶42-48); (3) Defamation of Character (¶¶58-70); (4) Intentional Interference with Prospective Economic Advantage (¶¶71-76); (5) Intentional Infliction of Emotional Distress (¶¶77-81); (6) Negligent Infliction of Emotional Distress (¶¶82-85); and (7) the FDCPA. Plaintiff seeks actual damages, punitive damages, costs, litigation expenses and attorneys' fees. Pl. Cmp., Prayers for Relief for Counts I, II, IV, V-VII and IX.

### III.   ARGUMENT

#### A.   The Standard of Review for a Rule 12(b)(6) Motion to Dismiss.

A plaintiff's is obligated to provide the "grounds" of his "entitle[ment] to relief" in order to survive a Rule 12(b)(6) motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 -1965 (2007). This requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. *Id.* The "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* Additionally, when a plaintiff pleads herself out of court, i.e. admits all the ingredients of an impenetrable defense, a complaint that otherwise states a claim may be dismissed under Rule 12(b)(6). *Xechem, Inc. v. Bristol-Myers Squibb Co.,* 372 F.3d 899, 901 (7th Cir. 2004) (citing *Walker v. Thompson,* 288 F.3d 1005 (7th Cir.2002)).

#### B.   Plaintiff's State Law Claims Also Require Dismissal Because Those Claims Fail to State A Cause Of Action.

1.   **Plaintiff's ICFA claim fails because Plaintiff has not alleged actual damages that proximately resulted from reliance on the alleged actions of ICS.**

To state a cause of action for violation of the ICFA, a plaintiff must allege that: (1) the defendant engaged in a deceptive act or practice; (2) the defendant intended that the plaintiff would rely on the deception; (3) the deception occurred during conduct involving trade or

4

commerce; (4) the plaintiff suffered actual damages; and (5) the plaintiff's damages were proximately caused by the defendant's deceptive conduct. *Guinn v. Hoskins Chevrolet*, 361 Ill.App.3d 575, 588, 836 N.E.2d 681, 692-692 (1st Dist. 2005). "In an action for fraud, damages may not be predicated on mere speculation and must be a proximate consequence of the fraud." *Cangemi v. Advocate South Suburban Hosp.*, 364 Ill.App.3d 446, 470, 845 N.E.2d 792 (1st Dist. 2006) (emphasis added). Damages proximately resulting from reliance upon an actionable misrepresentation are an essential element of a fraud claim. *City of Chicago v. Michigan Beach Housing Cooperative,* 297 Ill.App.3d 317, 327, 696 N.E.2d 804 (1st Dist. 1998). To establish proximate cause, the plaintiff must show that his damages would not have occurred but for the alleged fraud. *Price v. Philip Morris, Inc.,* 219 Ill.2d 182, 848 N.E.2d 1, 52 (2005).

Here, Plaintiff has plead himself out of court because he was not actually deceived by any of ICS alleged misrepresentations. Specifically, Plaintiff's Complaint reflects that Plaintiff was at all times aware that the two debts incurred on March 9, 2005 had been discharged in bankruptcy and that he had arranged a payment plan with Resurrection for the remaining three debts. Pl. Cmp. at ¶¶11-16 and 22. Plaintiff's lack of reliance on the alleged misrepresentations is further evidenced by the fact that he allegedly contacted ICS to inform them that he did not owe the debts each time ICS allegedly contacted him. Pl. Cmp. at ¶¶11-16 and 20-25; *see Gros v. Midland Credit Mgmt,* 525 F. Supp. 2d 1019, 1025 (N.D. Ill. 2007) (dismissing an ICFA claim where plaintiff was not actually deceived because he alleged that he disputed the debt at issue). Since Plaintiff's Complaint fails to articulate any actual damage he suffered as a result of his reliance on any of ICS's alleged conduct, it should be dismissed.

In *Rogalla v. Christie Clinic, P.C.,* 341 Ill.App.3d 410, 420-421, 794 N.E.2d 384 (4th Dist. 2003), the plaintiff's claimed damages consisted of the loss of the use of certain funds due to an improperly asserted Mechanics Lien. The court dismissed the fraud claim with prejudice

stating that none of the plaintiff's particular factual allegations linked "the alleged misrepresentations or omissions to the alleged injury." *Id.*

In *Cangemi v. Advocate South Suburban Hosp.,* 364 Ill.App.3d 446, 469, 845 N.E.2d 792 (1st Dist. 2006), the plaintiff contended that as a result of a fraudulent misrepresentation, she suffered emotional distress and incurred expenses on psychological and psychiatric treatment. *Id.* The court held that these allegations could not state a claim for fraud because there was no nexus between reliance on the fraudulent representations and the alleged damages. *Id.*

Plaintiff's ICFA claim here suffers from the same defects that led to the dismissal of the fraud claims in *Rogalla* and *Cangemi*. Essentially, Plaintiff claims to have sustained damage based on ICS's attempts to collect various debts owed to Resurrection. However, Plaintiff fails to articulate with any specificity actual damages proximately caused by his reliance on ICS's alleged misrepresentations. Like the plaintiffs in *Rogalla* and *Cangemi,* Plaintiff's failure to articulate any actual damages caused by ICS's alleged conduct is fatal to his claim. Accordingly, Count I of Plaintiff's Complaint should be dismissed.

### 2.     Plaintiff's IUDTPA claim fails as a matter of law.

The IUDTPA was not intended to be a consumer protection statute but, rather, was intended to prohibit unfair competition. *Popp v. Cash Station, Inc.,* 244 Ill.App.3d 87, 98, 613 N.E.2d 1150, 1156 (1st Dist. 1992); *Disc Jockey Referral Network, Ltd. v. Ameritech Publishing,* 230 Ill.App.3d 908, 915, 596 N.E.2d 4, 9 (1st Dist. 1992). The IUDTPA does not provide a private right of action for damages but rather only allows a private right of action for injunctive relief under limited circumstances. *Greenberg v. United Airlines,* 206 Ill.App.3d 40, 46-47, 563 N.E.2d 1031, 1036-1037 (1st Dist. 1990). Here, Plaintiff seeks actual damages, punitive damages, and costs and attorneys' fees <u>not</u> injunctive relief. Pl. Cmp., Prayer for Relief for Count II. Thus, as a threshold matter, Count II requires dismissal because Plaintiff cannot recover any of the relief he seeks under the IUDTPA.

Even if Plaintiff could recover money damages under the IUDTPA (which he cannot), Count II should be dismissed because it fails to state a cause of action. Count II alleges that ICS violated 815 ICLS 510/2(a)(8) and (2). Pl. Cmp. ¶43. Specifically, those portions of the IUDTPA state the following:

> (a) A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person:
> \*\*\*
> (8) disparages the goods, services, or business of another by false or misleading representation of fact;
> \*\*\*
> (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

815 ILCS 510/2.

In the present case, Plaintiff alleges that ICS violated these provisions of the IUDTPA when, on behalf of Resurrection, it attempted to collect various debts that had been either discharged in bankruptcy or paid pursuant to the alleged payment plan. Pl. Cmp. ¶¶44-48. Plaintiff further alleges that ICS violated the IUDTPA when it reported certain of these account to the credit reporting agencies. *Id.* These allegations, however, fail to articulate any conduct by ICS that would bring it within the scope of the IUDTPA. Plaintiff has not and cannot allege that ICS made any publication disparaging his goods, services or business or engaged in any conduct creatring a likelihood of consumer confusion. *See Associated Underwriters of America Agency, Inc.,* 356 Ill. App. 3d 1010, 1069 (1st Dist. 2005) (requiring a public communication regarding the plaintiff's goods or services by the defendant in order to maintain a cause of action under the IUDTPA); *see also Neopost Industrie B.V. v. PFE Int'l, Inc.*, 403 F. Supp. 2d 669, 685 (N.D. Ill. 2005) (requiring the plaintiff to show a likelihood of consumer confusion in order to maintain a cause of action under the IUDTPA). Since Plaintiff cannot recover money damages and has failed to articulate any conduct by ICS that violated either 815 ICLS 510/2(a)(8) and (2), his allegations are insufficient to state a cause of action under the IUDTPA and Count II should be dismissed.

### 3. Count IV (Defamation of Character) requires dismissal as Plaintiff has not pled special damages.

Initially, the Court may disregard most of the allegations that form the basis for Plaintiff's defamation claim as most of the alleged conduct occurred beyond the statute of limitations. *See* 735 ILS 5/13-201 (setting the statute of limitations for a defamation claim as one year). Specifically, Paragraph 61-62 and 64 of Plaintiff's defamation claim contain allegations of conduct which occurred more than a year prior to the time Plaintiff filed this action. The only allegations of Count IV which allegedly occurred with the statute of limitations are contained in Paragraphs 64 and 65.

Even if most of Count IV were not time barred (which it is), it also fails because Plaintiff has failed to adequately plead special damages. A cause of action for defamation under Illinois law can fall under one of two categories: *per se* or *per quod*. A statement is defamatory *per se* if the statement is so "obviously and naturally harmful to the person to whom it refers that a showing of special damages is unnecessary." *Owen v. Carr,* 113 Ill.2d 273,497 N. E. 2d 1145,1147 (1986). A statement is defamatory *per se* only if it falsely imputes: (1) the commission of a criminal offense; (2) infection of a loathsome communicable disease; (4) inability to perform or want of integrity in the discharge of duties of office or employment; or (5) a lack of ability in the plaintiff's trade, profession or business. *Id.* Statements, such as the one alleged to have been made here, about a person's credit history are not defamatory *per se. Dornhecker v. Ameritech Corp.,* 99 F.Supp.2d 918, 933 (N.D.Ill. 2000) (requiring a plaintiff to allege special damages in virtually identical scenario).

If a statement is not defamatory *per se*, then the only manner by which a cause of action can be maintained is if the plaintiff can show special damages. *Id.* The plaintiff must allege these damages with specificity to establish that the "false statement" caused a specific damage. *Spelson v. CBS, Inc.,* 581 F.Supp. 1195, 1206 (N.D. Ill. 1984) *aff'd* 757 F.2d 129. The plaintiff

must not allege conclusions. *Dornhecker,* 99 F.Supp.2d at 933; *Tamburo v. Calvin,* 1995 WL 121539 (N.D. Ill. 1995); *Paul v. Premier Elec. Const. Co.*, 581 F.Supp.721 (D.C. Ill. 1984).

In *Tamburo,* the plaintiff alleged that as a result of the defendant's statements he suffered the following damages: "lost sales", "a devastating loss of business", "loss of business reputation" and "mental anguish and excessive stress." Those blanket allegations were not enough to satisfy the specific pleading requirements for a defamation claim. Similarly, in *Paul*, the plaintiff alleged that he suffered $12,500 in damages to his good name, reputation and business. The court held that these damages were not sufficiently plead in that there was "no basis for the figure, no connection between the defamatory statement and the damage, and did not specify the nature of the damage." *Id.* at 274.

Like the allegations of damage in *Dornhecker, Tamburo* and *Paul*, Plaintiff's general allegation of damages do not meet the specificity required to withstand a motion to dismiss. Illinois law is clear that a statement about an individual's credit history are not *per se* defamatory. *Dornhecker*, 99 F.Supp.2d at 933. As such, Plaintiff's defamation cause of action is *per quod* and his failure to alleged special damages requires the dismissal of Count IV.

  **4. Count V (Intentional Interference with Prospective Economic Advantage) fails to state a cause of action.**

The elements of the tort of interference with prospective business advantage include: "(1) plaintiff's reasonable expectation of entering a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful or intentional interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference." *Miller v. Lockport Realty Group, Inc.,* 377 Ill.App.3d 369, 374, 878 N.E.2d 171, 176, (1st Dist. 2007).

Here, Plaintiff fails to plead any of the elements needed to state a claim for the tort of interference with prospective business advantage. Initially, Plaintiff fails to allege that he had a reasonable expectation of entering a valid business relationship. Rather, Plaintiff merely alleges

generally that he had a reasonable expectation of entering into a valid business relationships with "many financial institutions that extend credit to consumers." Pl. Cmp. at ¶72. However, this conslusory allegation is insufficient to satisfy the reasonable expectancy element of Plaintiff's cause of action. *Schaffner v. U.S. Bank N.A.,* 2004 WL 783352, 3 (N.D.Ill. 2004) (*citing Anderson v. Vanden Dorpel,* 172 Ill.2d 399, 217 Ill.Dec. 720, 667 N.E.2d 1296, 1299-1300 (1996) (the hope of receiving a job offer is not a sufficient expectancy) and *Buchanan v. Serbin Fashions, Inc.,* 698 F.Supp. 731, 734 (N.D.Ill.1988) (same)).

Similarly, Plaintiff's allegation that "Defendants had knowledge that of the future business because it [*sic*] is familiar with the business practice whereby financial institutions review credit reports before extending credit to consumers[.]" cannot satisfy the second element of his cause of action. Pl. Cmp. at ¶72. This allegation is deficient because Plaintiff cannot identify any particular financial institutions from whom he expected to obtain credit. *Schaffner v. U.S. Bank N.A.,* 2004 WL 783352, 3 (N.D.Ill. 2004) (stating that "[t]he allegation that plaintiffs *applied* for financing is not sufficient to allege that they reasonably expected to receive the financing.")

Count IV also fails because Plaintiff has not alleged that ICS engaged in any conduct with the purpose or intent of preventing a legitimate expectancy from ripening into a valid business relationship. Under Illinois law proof of this element of tortious interference with prospective economic advantage "requires, among other things, a showing that the tortfeasor acted with actual malice" *Capital Options Invs., Inc. v. Goldberg Bros. Commodities, Inc.,* 958 F.2d 186, 189 (7th Cir.1992). To establish malice under Illinois law a plaintiff must prove that the defendant "acted with a desire to harm, which was unrelated to the interest [it] was presumably seeking to protect by bringing about the contract breach." *International Star Registry of Illinois v. ABC Radio Network, Inc.,* 451 F.Supp.2d 982, 992 (N.D.Ill. 2006). Here, Plaintiff has not articulated any specific entity to whom ICS alleged conduct was directed to or alleged

10

that ICS acted with malice. Thus, the third element of Plaintiff's cause of action is not met. Accordingly, Count V requires dismissal.[4]

### 5. Count VI (Intentional Infliction of Emotional Distress) fails to state a cause of action.

#### i. Plaintiff fails to sufficiently allege severe and outrageous conduct.

In order to state a claim for intentional infliction of emotional distress (sometimes referred to herein as "IIED"), a plaintiff must allege that: (1) the conduct involved was extreme and outrageous; (2) the defendant either intended that his conduct inflict severe emotional distress, or know that there was a high probability that his conduct will cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress. *McGrath v. Fahey,* 126 Ill.2d 78, 86, 533 N.E.2d 806 (1988). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Id.*, *Kolegas v. Heftel Broadcasting Corp.,* 154 Ill.2d 1, 21, 607 N.E.2d 201 (1992). "Mere insults, indignities, threats, annoyances, petty oppressions or trivialities" are not actionable. *Id.* at 89, *Public Fin. Corp. v. Davis,,* 66 Ill.2d 85, 86, 360 N.E.2d 765, 767 (1976). Similarly, the tort does not encompass acts which are only "inconsiderate, rude, vulgar, uncooperative, unprofessional and unfair." *Oates v. Discovery Zone,* 116 F.3d 1161, 1174 (7th Cir.1997) (quoting *McGrath,* 127 Ill.Dec. at 727, 533 N.E.2d at 809). Rather, the plaintiff must allege coercion, abuse of power or authority, and harassment." *Id.* at 86-89.

Illinois state and federal courts have regularly dismissed IIED claims based on the plaintiff's failure to allege sufficiently outrageous and severe conduct. The case most analogous to the instant action is *Public Finance*. In that case, the Illinois Supreme Court affirmed the dismissal of the plaintiff's IIED claim, holding that frequent calls from the plaintiff to the defendant for the collection of a debt, often more than once per day and even while she was in

---

[4] Count V should also be dismissed as Plaintiff has again failed to adequately plead any damages caused by the alleged conduct. Rather, Plaintiff seeks $50,000 in actual damages without specifying the basis for those damages. Pl. Cmp., Prayer for Relief for Count V.

11

6330020v2 888206

the hospital, failed to allege sufficiently severe and outrageous conduct. *Id. See also Sutherland v. Illinois Bell*, 627 N.E.2d 145 (1st Dist. 1993)(affirming dismissal of IIED claim because defendant-phone company telephoning customer and threatening to cut off service if she did not pay her bill "was not conduct beyond all possible bounds of decency" and stating that "there can be no question but that defendants' conduct, as pleaded by plaintiff in her first amended complaint, does not even approach the type of outrageous and extreme behavior required to state a cause of action for intentional infliction of emotional distress"), *Farnor v. Irmco Corp.* (1979), 73 Ill.App.3d 851, 855, 392 N.E.2d 591, 595 (1st Dist. 1979) (three threatening telephone calls from the defendant wherein he used profanity and threatened to steal the plaintiff's furniture was insufficient to plead a cause of action for intentional infliction of emotional distress), *Kelly v. Franco*, 72 Ill.App.3d 642, 648-49, 28 Ill.Dec. 855, 860, 391 N.E.2d 54, 59 (1st Dist. 1979) (repeated telephone calls by defendant to plaintiff threatening to force plaintiffs out of the neighborhood were insufficient to state a cause of action for intentional infliction of emotional distress).

As in the cases cited above, the conduct alleged by Plaintiff falls woefully short of the severe and outrageous conduct that must be alleged to state an IIED claim. Plaintiff alleges that he received several collection letters and that certain debts were reported to credit bureaus despite being either discharged in bankruptcy or allegedly subject to a payment plan. Plaintiff alleges that he had to contact ICS on several occasions as a result. These allegations do not rise to the level of severe and outrageous conduct. Accordingly, Count VI should be dismissed.

   ii.  **Plaintiff fails to allege severe emotional distress.**

In addition to failing to allege extreme outrageous conduct, Plaintiff fails to allege that he sustained severe emotional distress. It is well settled that in order to state a claim, the plaintiff must allege distress that is "so severe that no reasonable man could be expected to endure it." *Public Finance,* 66 Ill.2d at 90, 360 N.E.2d 765. "Although fright, horror, grief, shame,

humiliation, worry, etc. may fall within the ambit of the term 'emotional distress, these mental conditions alone are not actionable." *Id.*

Here, Plaintiff's only allegations relative to distress are his cookie-cutter conclusions that he "anxiety; mania at times; racing thoughts; negative thoughts; worrying; suicidal thoughts; loss of appretite; loss of interest in hobbies; physical exercise; aggrevation; fits of extreme anger; and headaches." Pl. Cmp. at ¶81. The Illinois Supreme Court has unequivocally stated that this type of emotional distress is simply not actionable. *Public Finance Corp.,* 66 Ill.2d at 90. Numerous Illinois courts have held similar allegations to be insufficient as a matter of law.

For example, in *Welsh v. Commonwealth Edison Co.,* 306 Ill.App.3d 148, 150, 713 N.E.2d 679 (1st Dist. 1999), the court dismissed an IIED claim because, "although the plaintiffs generally alleged anxiety, humiliation, and extreme emotional distress, the complaint contained no factual allegations that rose to the requisite level of severity of emotional distress."

Similarly, in *Sutherland v. Illinois Bell*, 627 N.E.2d 145, 153-54 (1st Dist. 1993), the court held "plaintiff does not claim that the distress which she suffered as a result of defendants' conduct was severe. Instead, she merely asserts that she was frustrated, annoyed and disgusted with the phone service provided by defendants, and especially with the 'run around' she was given by their employees."[5]

Based on the foregoing authority and Plaintiff's failure to assert anything other than generalize allegations of minor "distress" for which Illinois law provides no remedy, Count VI should be dismissed.

**6.    Count VII (Negligent Infliction of Emotional Distress) fails to state a cause of action.**

In order for a complaint for negligent infliction of emotional distress, to be legally sufficient, must set out facts that establish the existence of a duty owed by the defendant to the plaintiff, a

---

[5] *See also Khan v. American Airlines,* 266 Ill.App.3d 726, 639 N.E.2d 210 (1st Dist. 1994) (recurring nightmares and problems with sleeping and fear of re-arrest is not severe distress); *see, e.g., Whitehead v. AM Intern., Inc.*, 860 F.Supp. 1280, 1291 (N.D.Ill. 1994) (dismissing IIED claim because, among other things, plaintiff failed to sufficiently allege distress so severe that no reasonable person could be expected to endure it).

breach of that duty, and an injury proximately caused by that breach. *Corgan v. Muehling,* 143 Ill.2d 296, 158 Ill.Dec. 489, 574 N.E.2d 602 (1991). The determination of whether a duty exists is an issue of law to be determined by the court. *Corgan,* 143 Ill.2d at 306, 158 Ill.Dec. at 493, 574 N.E.2d at 606. In determining whether to impose a duty upon a defendant, a court looks at various policy considerations, such as the likelihood of harm, the gravity of the injury, the burden of guarding against the injury, and the relationship between the parties. *Corgan,* 143 Ill.2d at 306, 158 Ill.Dec. at 493, 574 N.E.2d at 606.

To state a cause of action for the tort of negligent infliction of emotional distress, a plaintiff must allege that the infliction of emotional distress arose out of the *negligent* acts of a defendant. *State Farm Fire & Casualty Co. v. Watters,* 268 Ill.App.3d 501, 510, 205 Ill.Dec. 936, 942, 644 N.E.2d 492, 498 (5th Dist. 1994). Where the purported emotional distress has been caused by *intentional* acts committed by a defendant, the plaintiff does not state a cause of action for *negligent* infliction of emotional distress. *Watters,* 268 Ill.App.3d at 510, 205 Ill.Dec. at 942, 644 N.E.2d at 498. Thus, to the extent Plaintiff's Complaint bases the allegations of Count VII on alleged intentional conduct contained elsewhere in his Complaint, Count VII fails to state a claim. Plaintiff does this by incorporating all of the his prior allegations, including those of intentional conduct, into the first paragraph (Paragraph 81) of his negligent infliction of emotional distress claim. Moreover, Count VII itself contains allegations that Defendants engaged in intentional conduct by alleging that Defendants harrased Plaintiff, made misrepresentations, and committed fraud. Pl. Cmp. at ¶83.

Count VII also fails because Plaintiff does not allege that ICS owed him any duty or make any allegations that would support the conclusion that ICS owed him a duty. Pl. Cmp. at ¶¶81-85. Rather, Plaintiff merely alleges that acts were done negligently (Pl. Cmp. at ¶81). Such allegations are insufficient to state a claim for negligent infliction of emotional distress.

Plaintiff owed debts to Resurrection, which ICS sought to collect. ICS owed no duty to Plaintiff under these circumstances. Accordingly, Count VII should be dismissed.

### C.     Plaintiff's FDCPA Claim (Count IX) fails to state a cause of action.

The FDCPA provides a one-year statute of limitations. 15 U.S.C. § 1692k ("An action to enforce any liability created by this subchapter may be brought ... within one year from the date on which the violation occurs."). All of the allegations in Count IX, save one contained in Paragraph 101, involve conduct that allegedly occurred more than a year before the filing of Plaintiff's Complaint. The Court may ignore the other allegations of Count IX as they are time barred.

The only allegation in Count IX concerning any conduct within the FDCPA's one year statute of limitations is contained in Paragraph 101. Plaintiff alleges that ICS sent him a collection letter on July 11, 2007 in connection with a debt in the amount of $99.27 services rendered on April 14, 2006. Pl. Cmp. at ¶101. Plaintiff then alleges that this letter was an attempt to collect a debt in violation of Section 806 of the Bankruptcy Code. *Id*. However, that allegation is contradicted by Plaintiff' allegation that his bankruptcy was discharged in July of 2005. How could a July 2005 bankruptcy discharge relieve a consumer of a financial obligation incurred more than a year later, in April of 2006? The answer is simple, it could not and Plaintiff's FDCPA violation fails to the exent it is based on a purported violation of a bankruptcy stay.

Plaintiff also attempts to impute Resurrection's knowledge regarding an alleged payment plan or alleged payments to ICS. However, it is black letter law that the knowledge of the creditor is not imputed to the debt collectior. *Randolph v. IMBS, Inc.*, 368 F.3d 726, 729 (7th Cir. 2004). Because Plaintiff does not allege that he or Resurrection ever informed ICS of the alleged payment plan, Plaintiff cannot state a claim for an alleged FDCPA violation. Accordingly, Count IX fails to state a cause of action and should be dismissed.

## IV. CONCLUSION

WHEREFORE, Defendant, ILLINOIS COLLECTION SERVICES, INC., respectfully requests that the Court dismiss Plaintiff's Complaint and enter judgment in its favor.

                                                                ILLINOIS COLLECTION SERVICES, INC.

                                                                By: *s/Stephen D. Vernon*
                                                                           One of Its Attorneys

David M. Schultz
Stephen D. Vernon
HINSHAW & CULBERTSON LLP
222 N. LaSalle Street, Suite 300
Chicago, Illinois 60601
312-704-3000
312-704-3001
dschultz@hinshawlaw.com
svernon@hinshawlaw.com

6330020v2 888206