## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISCTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| Joseph J. Giacalone, Jr. Esq. | ) ) | Case No. 08-CV-2670 |
| Plaintiff, | ) | Hon. George M. Marovich |
| | ) ) | Mag. Judge Susan Cox |
| vs. | ) ) | |
| Resurrection Medical Center, | ) | IL Circuit Court |
| and | ) | Case No.2008L002984 |
| Illinois Collection Service, Inc. | ) | |
| | **)** | |
| Defendants. | ) | |

## <u>NOTICE OF FILING</u>

TO:    Edwin E. Brooks            David M. Schultz
       Steven D. Hamilton         Stephen Vernon
       McGuire Woods LLP          Hindshaw & Culber.
       77 W. Wacker Ste.  4100    222 N. LaSalle Ste.300
       Chicago, IL 60601          Chicago, IL 60601

On July 14, 2008, I filed electronically and in person at the Federal Dirksen Building, 219 S. Dearborn, Chicago Illinois, Plaintiff's Response Motion for Dismissal of Defendant Resurrection's Motion to Dismiss and Memorandum of Law in Support of Response Motion.

By: s/Joseph J. Giacalone, Jr.
4304 N. Osceola Norridge, IL 60706
847-707-9000
Att. No. 35789

1

## <u>CERTIFICATE OF SERVICE</u>

I certify that I have served a copy of the attached document by electronic means and regular mail to the above recipients on July 14, 2008.

By: s/Joseph J. Giacalone, Jr.
4304 N. Osceola Norridge, IL 60706
847-707-9000
Att. No. 35789

Joseph J. Giacalone, Jr.
Giacalone & Assoc., LLC
4304 N. Osceola
Norridge, IL 60706
847-707-9000
Attorney No.  35789

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISCTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Joseph J. Giacalone, Jr. | ) | |
| Esq. | ) | Case No. 08-CV-2670 |
| | ) | Hon. George M. Marovich |
| Plaintiff, | ) | Mag. Judge Susan E. Cox |
| vs. | ) | |
| | ) | |
| Resurrection Medical Center, | ) | IL Circuit Court |
| and | ) | Case No. 2008L002984 |
| Illinois Collection Service, Inc. | ) | |
| | **)** | |
| Defendants. | ) | |

<u>**PLAINTIFF, JOSEPH J. GIACALONE, JR.'S RESPONSE TO DEFENDANT,
RESURRECTION HOSPITAL'S, MOTION TO DISMISS**</u>

Plaintiff, Joseph J. Giacalone, Jr., prays that this Honorable Court Dismiss

Defendant, Resurrection Hospital's, motion to dismiss.  In support of this motion,

Plaintiff states as follows:

Plaintiff submits the following: MEMORANDUM IN SUPPORT OF
PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS.

The Memorandum is outlined as follows:

A.    This case is not preempted by the Fair Credit Reporting Act ("FCRA")
B.    The complaint is not prolix
C.    The Consumer Fraud Act ("CFA") count is well-pled
D.    Defendant's argument that this cause should be in the bankruptcy court fails
E.    Plaintiff does not lack standing to sue
F.    Plaintiff's defamation count is pled with particularity and it pleads actual damages
G.    Plaintiff's defamation claim is not barred by the statute of limitations
H.    The tortous interference with prospective business relationship is a valid count
I.    Intentional infliction of emotional distress is well pled
J.    The negligent infliction of emotional distress count is withdrawn
K.    Fraud is had in this cause
L.    Punitive damages are warranted

3

WHEREFORE, Plaintiff, Joseph J. Giacalone, Jr., prays for:

a.    dismissal of defendant's motion to dismiss;

b.    leave to file an amended complaint in the event of dismissal of the complaint;

c.    costs, litigation expenses, and attorneys' fees to defend this issue; and

d.    such other relief as the Court may determine to be just and equitable.

Respectfully Submitted,

By: s/Joseph Giacalone, Jr.
4304 N. Osceola Norridge, IL 60706
847-707-9000
Att. No. 35789

Joseph J. Giacalone, Jr. Esq.
Giacalone & Associates, LLC
4304 North Osceola Avenue
Norridge, IL 60706
Phone:  847-707-9000
Attorney No. 35789

## CERTIFICATE OF SERVICE

I certify that I have served a copy of this document by electronic means and regular mail to the defendants on July 14, 2008.

By: s/Joseph Giacalone, Jr.
4304 N. Osceola Norridge, IL 60706
847-707-9000
Att. No. 35789

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISCTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Joseph J. Giacalone, Jr. | ) | |
| Esq. | ) | Case No. 08-CV-2670 |
| | ) | Hon. George M. Marovich |
| Plaintiff, | ) | Mag. Judge Susan E. Cox |
| vs. | ) | |
| | ) | |
| Resurrection Medical Center, | ) | IL Circuit Court |
| and | ) | Case No. 2008L002984 |
| Illinois Collection Service, Inc. | ) | |
| | **)** | |
| Defendants. | ) | |

## PLAINTIFF, JOSEPH J. GIACALONE, JR.'S, MEMORAMDUM OF LAW IN RESPONSE TO DEFENDANT, RESURRECTION HOSPITAL'S, MOTION TO DISMISS

Plaintiff, Joseph J. Giacalone, Jr., (hereinafter "plaintiff") prays that this Honorable Court dismiss Defendant, Resurrection Hospital's, (hereinafter "defendant") motion to dismiss. In support of this motion, Plaintiff states as follows:

### INTRODUCTION

Plaintiff was treated at Defendant's hospital several times. In March 2005, he was treated. In April 2005, he filed for bankruptcy. The hospital's debt was discharged in July 2005. Despite notice from the bankruptcy court and urges by the plaintiff, Defendant continued aggressive and illegal collection methods thereafter. Defendant hired Illinois Collection Service, (hereinafter "ICS) to collect this discharged debt. The debt was reported to the credit bureaus (Transunion, Experian, and Equifax). The debt appeared on plaintiff's credit reports as an "unpaid collection account". Various third parties viewed the false debt on the credit reports. Damages in the form of lost credit, higher interest rates charged, and distress ensued.

5

In November of 2005, plaintiff was again treated at defendant hospital. He was sent a bill for $2138. Plaintiff told defendant that he did not owe that amount because he had insurance at that time. He contacted his insurance company and verified this fact. Defendant continued to demand $2138, a false figure. Defendant caused this debt to be reported the credit bureaus, which appeared as an unpaid collection account.

In April of 2006, plaintiff was treated at defendant's hospital. He was billed for services. On the phone, he asked an employee of defendant how much he owed and the employee told him $881. Plaintiff paid this amount. Despite the fact of an overpayment, defendant again reported the misrepresentation to the credit bureaus.

Defendant agreed to allow plaintiff to pay $50 a month to pay down a subsequent bill. Plaintiff was diligent in making all payments on time. Despite this, defendant continued to harass plaintiff by telephone and mail. Defendant reported this debt to ICS who continued unjustified collection methods.

On or about March 20, 2007, plaintiff received and reviewed his credit reports. This discharged bill, $2138 bill, and a $99 bill appeared on the reports as "unpaid collection accounts". Plaintiff contacted defendant and ICS and eventually each account was deleted (removed) from the reports.

Plaintiff was very distressed to find out that false credit information had appeared on his credit reports, as early as July 2005. From July 2005, through the time he became aware of the misrepresentation, plaintiff applied for and was rejected for numerous lines of credit. He was issued three credit cards during this period and the interest rate terms were high because of the appearance of the false collection accounts on his credit reports.

Due to these numerous bad acts on the part of defendant, in addition to financial damages, plaintiff suffered great distress.

On March 17, 2008, plaintiff filed a complaint alleging the following:

I.     Violation of the Illinois Consumer Fraud Act 815 Ill. Comp State 505/1 et seq.;

II.    Violation of the Uniform Deceptive Trade Practices Act 815 Ill. Comp. Stat. 510/1 et seq.;

III.   Violation of the Fair Credit Reporting Act;

IV.    Defamation;

V.     Tortuous interference with prospective economic advantage;

VI.    Intention infliction of emotional distress;

VII.   Negligent infliction of emotional distress;

VIII.  Fraud; and

IX.    Violation of Fair Debt Collection Practices Act.


## LEGAL STANDARD

A complaint will not be dismissed for failure to state a claim unless it is "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). This Court must take all allegations in the complaint as true, and draw all reasonable inferences in the light most favorable to the plaintiff. *Pickrel v. City of Springfield,* 45 F.3d 1115, 1117 (7th Cir.1995). To survive a motion to dismiss, a plaintiff "need not plead particular legal theories or particular facts in order to state a claim."

_DeWalt v. Carter,_ 224 F.3d 607, 612 (7th Cir.2000). The plaintiff need only give "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." _Conley v. Gibson,_ 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).   In a motion to dismiss, a court should interpret facts in the light most favorable to the plaintiff then determine the legal sufficiency of a cause of action.

**ARGUMENT**

**A.    This case is not preempted by the Fair Credit Reporting Act ("FCRA").**

As to an action in libel (defamation) against one who has tortuously submitted defamatory statements to a credit reporting agency, the FCRA does not foreclose or preempt any state-bases private causes of action.  45 Am. Jur. Proof of Facts 3d 221. From a practical standpoint, the federal act does not alter the claim of libel against one who submits credit information to a credit reporting agency. _Id._

Defendant argues section 1681t, as quoted in his motion, preempts Count I Violation of the Illinois Consumer Fraud Act 815 Ill. Comp State 505/1 et seq.;  Count II  Violation of the Uniform Deceptive Trade Practices Act[1] 815 Ill. Comp. Stat. 510/1 et seq.; Count V Tortuous interference with prospective economic advantage; and Count VIII Fraud.

Congress did not intend 1681t to preempt tort causes of action.  _Miller v. Well Fargo,_ 2008 WL 793676 (W.D. Ky.,).  Thus defendant's claim that Counts V for Tortuous interference with prospective economic advantage and Count VIII Fraud is greatly in error. _Id._

---

[1] Plaintiff withdraws his claim under the Deceptive Business Practices Act.

The 7th Circuit held that the FCRA did not completely preempt state law claims for defamation and violations of the CFA. King v. Retailer's Nation Bank. 388 F. Supp. 2d 913, 917 (N.D. Ill. 2005). The court further noted that Congress' legislative history regarding section 1681t does not support sweeping preemptive intent. Id. The CFA claim is not preempted. Neither the state-bases tort claims and the nor the CFA claims are preempted by the FCRA.

Second—still in regards to preemption--Defendant, Resurrection Hospital, argues that plaintiff's defamation claim is pre-empted by the FCRA, 15 U.S.C. § 1681h(e), which states:

Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report **except** as to false information furnished with malice or willful intent to injure such consumer.

§ 1681h(e) only preempts state law claims "in the nature of defamation, invasion of privacy, or negligence" to the extent that such claims do not result from willful or malicious conduct. In other words, if a plaintiff can show malice or willful intent to injure, he may bring a defamation action in federal court. Plaintiff's state law tort claims are not preempted by the FCRA because Plaintiff alleges that Defendants acted with "malice" in each instance. In cases interpreting the FCRA's relationship to state law claims of defamation and invasion of privacy, the phrase "malice" in § 1681h(e) has been interpreted to be "with knowledge that it was false or with reckless disregard of whether it was false or not." Dornhecker v. Ameritech Corp., 99 F.Supp.2d 918, 931

(N.D.Ill.2000). In cases interpreting "malice" in the context of negligence claims, Illinois law defines "malice" as higher than an ordinary level of negligence, on par with willfulness and wantonness. *Id.*   At the motion to dismiss stage, the Court examines the sufficiency of the pleadings, not the merits of the pleadings. *See Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir.1990).

In <u>Hucic</u>, the Northern District of Illinois Northern Division stated:

"The pleadings on each of the state law tort claims (Counts Three through Eleven) allege that Defendants knowingly submitted false credit reports to the credit reporting agencies. Plaintiff's pleadings are sufficient to survive a motion to dismiss for preemption."

Furthermore, the defamation claim survives scrutiny because plaintiff properly alleged malice.  Plaintiff alleged in paragraph 59 ("paragraph" is hereinafter represented as "PP"):

"The Defendants **maliciously** and wrongfully contrived to destroy the Plaintiff's good name, reputation, and credit by causing collection accounts to appear on Plaintiff's credit reports when the Defendants knew or should have known that collection efforts were: a)    unlawful, stayed and discharged by the bankruptcy court; b)    not reconciled with plaintiff's insurance company and a false figure; and c)   paid."

In subsequent paragraphs, the plaintiff describes four malicious statements in which the defendant intended to injure the plaintiff.  Moreover, in paragraph 67, plaintiff alleged "The Defendants knew or should have known that said [defamatory] statements were false".  This statement of fact mirrors the definition of malice in <u>Dornheckler</u>.

Defendant's bare-bones, conclusory statements regarding preemption without supporting case law must fail.  Plaintiff's statements regarding defamation are specific and descriptive.  When these facts from the Complaint are taken as true, it is clear that plaintiff has a claim for defamation that is not preempted by the FCRA.

Moreover, for purposes of the FCRA provision preempting defamation claims by a consumer, except as to false information furnished with malice or willful intent to injure the consumer, a "willful" violation may be found when the evidence shows that inaccuracies in credit reports arise from something more than an isolated instance of human error.  FCRA sec. 610(e). 15 U.S.C.A. sec 1681h(e); Manno v. American General Finance, 439 F.Supp 2d 418 (E.D. Pa 2006).  See Also Beuster v. Equifax, 435 F.Supp 2d 471(holding consumer sufficiently alleged that bank acted with actual malice when it furnished information to credit reporting agencies while entertaining serious doubts as to the truth of the publication or with a high degree of awareness of probable falsity; thus consumer's defamation claim was not barred by the FCRA).  There is a startling pattern of bad corporate behavior on the part of Resurrection Hospital.  The hospital's hair-trigger, fraudulent reports of false information to credit bureaus is willful and in complete disregard to a patient's rights.  As in Manno, defendant's actions amount to more than isolated instances of human error.

Policy considerations should be considered in this matter.  It would be a drastic measure to strike five of plaintiff's causes of action because of preemption by a federal statute.  Such a law undermines state laws there to protect injured consumers.  In an egregious case like this, a plaintiff should be allowed a day in court.  A large and powerful hospital has instituted greatly flawed collection and reporting methods, which injure their patients.  These facts are relevant and important and should be brought to light at trial.

**B.    The Complaint is not prolix.**

The American Heritage Dictionary of the English Language New College Edition
(1981) defines prolix as:  1. Wordy and tedious;  2.  Tending to speak or write at great
length.  After extensive research in investigating the facts in this matter and
investigating the law, the plaintiff, an attorney, identified nine causes of action.  As
counselors of law we understand that a complaint can be dismissed if the elements of a
cause of action are not pled well factually.  This civil action warranted the identification
of law and the application of law to facts.  It is no surprise that it is the intent of the
plaintiff to survive the motion to dismiss, and proceed in litigation in hope of settlement
or trial victory.  Plaintiff will leave it at that!

Defendants raise additional, separate grounds for dismissing each of the claims on
the basis of legal insufficiency.  We will address each claim in turn.

**C.    The Consumer Fraud Act Count is a well-plead Count**

Defendant argues the plaintiff did not rely upon the alleged deceptive acts.

Defendant states he was not actually deceived.

The defendant relies on <u>Gros</u>:.

"In this case, the Amended Complaint makes clear that Gros did not accept the false
assertion made to him by MCM that Gros was indebted to Ford Credit. Rather, Gros
alleges that he repeatedly informed MCM "that he owed no debt to Ford Motor Credit
Company and disputed the debt's existence ... explain[ing] that a court of law had found
in his favor regarding the debt in a lawsuit concluded in 2005." (Am.Compl.¶¶ 12-13).
Because Gros was not deceived by MCM's misrepresentation, he cannot state a claim for
fraudulent misrepresentation under the Act."

Gros is distinguishable. In the case at bar, plaintiff was deceived from July 2005 to March 20, 2007.  He was deceived from the time the hospital reported the discharged debt to the credit bureaus.  He had faith in their abilities to see their error and accept his urgings that the debt had been discharged.  The Plaintiff relied on the competence of defendant.  He relied on the promise that the discharged debt would not appear on his credit reports.

Moreover, he relied on the hospital's representations that the debt for $2138 would be reconciled and processed.  He informed them that he was insured at the time. They kept on sending him bills for the incorrect amount.  He assumed good faith on the part of the defendant to engage in fair dealing practices.  He did not feel the need to check his reports for a time because he had faith that the hospital would not report false information to the credit bureaus.

Plaintiff was deceived by the hospital into believing that they would follow Illinois Consume Fraud laws and not report false information to the credit bureaus.  Only by March 20, 2008, did plaintiff become aware of the unfair and deceptive reporting of false information to the credit bureaus.  He trusted the defendant to not engage in illegal and undermining behavior.  This trust was shattered when he found these several false accounts appearing on his credit reports as unpaid and in collection. See Richardson v. Baker (S.D.N.Y.1987), 663 F.Supp. 651 (improper debt collection activities violate consumer fraud regulations).)

The Consumer Fraud Act is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices. It is to be liberally

construed to effectuate its purpose. <u>Cripe v. Leiter</u>, 184 Ill. 2d 185, 191 (1998). Unfair or deceptive practices are described in the Act as:

"including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact *** in the conduct of any trade or commerce ***." 815 ILCS 505/2 (West 1992).

The elements of a claim under the Act are: (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; and (3) the occurrence of the deception during a course of conduct involving trade or commerce. <u>Cripe</u>, 184 Ill. 2d at 191. Recovery may be had for unfair as well as deceptive conduct. <u>Saunders v. Michigan Avenue National Bank</u>, 278 Ill. App. 3d 307, 313 (1996).

In determining whether a given course of conduct or act is unfair, we observe the Consumer Fraud Act mandates that "consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act." 815 ILCS 505/2 (West 1992). The United States Supreme Court in <u>Federal Trade Comm'n v. Sperry & Hutchinson Co.</u>, 405 U.S. 233, 31 L. Ed. 2d 170, 92 S. Ct. 898 (1972), cited with approval the published statement of factors considered by the Federal Trade Commission in measuring unfairness. <u>Sperry</u>, 405 U.S. at 244 n.5, 31 L. Ed. 2d at 179 n.5, 92 S. Ct. at 905 n.5. These factors are (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers. <u>Sperry</u>, 405 U.S. at 244 n.5, 31 L. Ed. 2d at 179 n.5, 92 S. Ct. at 905 n.5.

The case at bar is analogous to <u>Illinois v. Datacom</u>, 531 N.E.2d 839, 176 Ill.App.3d 697, 126 Ill.Dec. 212 (Appellate Court of Illinois First District, Fourth

Division 1988).  Through improper collection activities, Datacom made false statements to consumers.  Datacom misrepresented delinquent parking ticket fines.  The Court held that Datacom's debt collection services were governed by the Consumer Fraud Act and the Uniform Deceptive Trade Practices Act. Id  The Datacom court concluded that the complaint was sufficient to state a claim that Datacom's notices employed deception and fraud of a material facts to those persons who received Datacom's notices.  The court concluded defendant violated the Consumer Fraud Act and the Uniform Deceptive Trade Practices Act. Id.

Similarly, contrary to defendant's claim that the action was not unfair, defendant's collection techniques and resultant reporting of false accounts to the credit bureaus was unfair.  It was unfair and dishonest on many levels. Plaintiff never imagined that a discharged bill would be reported to the credit bureaus as unpaid and in collection. Neither did he imagine that a incorrect bill for $2138 would be reported when the real amount owed was $365 and he assumed that defendant charged it off.  Further, he never imagined that a paid bill would be reported to the credit bureaus.  These are specific facts alleged in the complaint.

The allegations of the complaint, specified in paragraphs 30-41, when interpreted in the light most favorable to the plaintiff, are sufficient to allege a cause of action under the CFA.  The plaintiff sites the CFA's elements in paragraph 31 and he sites factors in judging unfairness in paragraph 32.  PP 33 lists in great detail the deceptive, unethical, immoral acts' offending public policy in line with Sperry.  The statements made to the bureaus were plainly and patently false.  In a civilized society, these grossly negligent

acts offend public policy.  There should be consequences for such egregious conduct.  As these facts are taken as true, defendant's motion to dismiss must be stricken.

**D.      Defendant's argument that this case should be in the bankruptcy court fails.**

The issues in this matter center around defamatory reporting to credit companies. The violations of the automatic stay began in 2005.  At the time, these caused aggravation as damages. However, plaintiff did not become aware of the appearance of the false collection accounts until March 20, 2007.  This is when he became aware of significant damages:  that his reputation had been damaged by defendant in the eyes of numerous companies who denied him credit and gave him unfavorable terms.

None of the counts in the complaint allege a violation of the automatic stay as a cause of action.  The automatic stay violation of this law is ancillary to the state laws claims for defamation, tortuous interference with prospective business opportunity, intentional infliction of emotional distress, etc, and the statutory claim of violation of the CFA.  This is a case about abusive reporting of false accounts to credit bureaus.

**E.      Plaintiff does not lack standing to sue.**

Defendant argues that plaintiff does not have standing to sue under the FCRA.[2]

Miller v. Wells Fargo, 2008 WL 793676 (W.D. Ky., 2008) correctly held that consumers are authorized, under §§ 1681n and 1681o, to bring a private cause of action for a furnisher's willful or negligent violation of its § 1681s-2(b) duties.  Section 1681o provides consumers with a cause of action for negligent noncompliance with § 1681s-2(b), permitting the recovery of actual damages and attorney fees. 15 U.S.C § 1681o., Id.

---

[2] It should be noted that defendant does not argue lack of standing as to the other causes of action in the complaint.  His argument is limited to the issue of private causes as relating to the FCRA.

Section 1681n provides a cause of action for willful violations, entitling a consumer to recover punitive damages. 15 U.S.C. § 1681n., Id.

Because of  the clear mandate in Miller, the plaintiff is justified, as a private party, to hold defendant liable for violations of the FCRA.  Plaintiff properly alleges the applicable statute in PP 50 of the complaint "Responsibilities of furnishers of information to consumer reporting agencies" [15 U.S.C. sec. 1681s-2].  Then he properly alleges "Resurrection committed such violations willfully or negligently, thereby violating 15 U.S.C. sec 1681n, "Civil liability for willful noncompliance and 1681o, "Civil liability for negligent noncompliance."

Allowing consumers to enforce credit reporting laws under the FCRA is recognized in numerous cases, several highlighted in this brief including Hucic, King, Miller, and Morris.  Consumers brought cases for violations of the FCRA and defamation, among other torts, just as it is in this case.  Arguments regarding standing were not even raised in these cases because courts are clear on the subject.

It makes sense for consumers to be allowed to enforce their credit law rights. After all, Congress stated the purpose of the FCRA is to ensure accuracy in credit reporting and provide for an efficient financial and banking system.  Mandating that only government agencies should enforce rights under the act would be unduly burdensome.

**F.**     **Plaintiff's defamation count is pled with particularity and it pleads actual damages**

A first and fundamental consideration is to determine that the adverse credit information, which is at the core of the problem, is false.  Defendant makes no argument in regards to the critical facts in this case.  Were his case stronger, he would have

attacked the elements of defamation and their legal sufficiency.  Was the account

information reported to the credit bureaus false?  Yes.  Defendant fails to address critical

facts of the complaint.  This is due to the weaknesses of his arguments.  Instead, he

claims that plaintiff failed to allege actual damages.

A plaintiff bringing a per quod defamation claim must plead special damages to

recover. <u>Bryson</u>, 174 Ill. 2d at 103, 672 N.E.2d at 1221. Special damages are "actual

damage of a pecuniary nature." Bryson, 174 Ill. 2d at 87-88, 672 N.E.2d at 1214. Plaintiff

alleges extrinsic evidence to demonstrate the injurious meaning of the false statements,

which appeared on the credit reports.

<u>Voyles v. Sandia Mortgae Corp</u>, 724 N,E.2d 1276 (Ill.App.2 Dist. 2000) involved

a bank falsely reporting that plaintiff was delinquent in her mortgage payments to the

credit reporting agencies.  The bank initiated foreclosure proceedings.  Delinquent reports

always harm the debtor's credit reputation.  <u>Id</u>. at 1293.  The court went on to say:

"Plaintiff contends that she proved special damages. We agree. The trial court found that
plaintiff experienced a pecuniary loss as a result of the denial of her loan application.
This satisfies the special damages element of defamation per quod.
    Defendant contends that plaintiff failed to demonstrate that her reputation for
creditworthiness was in any way impaired. Defendant's assertions are unpersuasive.
Plaintiff proved that she was prevented from obtaining refinancing on her loan as a result
of defendant's defamatory statements. Moreover, the publication of the defamatory
information to the credit agencies could have no other effect than to impair plaintiff's
credit reputation. Accordingly, we hold that the trial court's determination that plaintiff
failed to prove defamation was against the manifest weight of the evidence. Therefore,
we reverse the judgment of the trial court and remand for further proceedings on the issue
of damages for defamation.

Plaintiff has alleged :  loss of credit, refusal to extend credit to the plaintiff, an impaired

good name and reputation, injuries to plaintiff's psyche, emotional distress, severe blows

to plaintiff's self-worth and self-confidence, and humiliation and embarrassment every

time plaintiff was rejected for credit.  PP70   This is a long accurate list of monetary and emotional damages as require under Illinois law. In Voles, the plaintiff proved that she was prevented from obtaining financing on her loan as a result of defendant's false reporting.  Similarly, in the case at bar, plaintiff's losses were pucuniary in the form of lost credit opportunities.  Furthermore, in plaintiff's prayer for relief, he alleges "actual damages".   Please consider:  "Inaccuracies related to collection accounts…lower a consumer's credit score and potentially decrease credit availability or increase the cost of credit for affected consumers."  Sandra F. Braunstein, Director, Division of Consumer and Community Affairs, Board of Governors of the Federal Reserve system before the Committee on Financial Services, U.S. House of Representatives (June 19, 2007).

It should be noted that damages recoverable in credit matters include humiliation or mental distress even if the consumer has suffered no out of pocket losses. Consumer Credit Protection Act sec. 617, 15 U.S.C.A. sec. 1681o. Acton v. Bank One, 293 F. Supp.2d 1092 (D. Ariz. 2003).  To receive actual damages in a defamation case it is not necessary to prove the actual monetary value of the claim.  Am. Jur. 2d, Libel and Slander sec. 375.  Evidence of opportunities lost when third parties learn of the adverse credit report and turn the plaintiff away would justify special damages.  45 Am. Jur. Proof of Facts 3d 221.

First, a loss of credit is an actual damage.  Money that would have been available to plaintiff was not lent because of the false credit report information. Second, higher interest rates are special damages as well.  Because of the fraud, plaintiff pays more due to unfavorable credit interest rate terms.  Finally, the distress plaintiff felt was real.  He was distraught when he learned of the frauds that ruined his credit. Credible witnesses

will testify to his ditress.

**G.    Plaintiff's defamation claim is not barred by the statute of limitations.**

The limitation period for a defamation claim is one year from ***discovery*** of the

defamatory statements.  Ill.Rev.Stat. ch. 110 Paragraghs 13-201 (1992); Tom Olesker's

Exciting World of Fashion v. Dun & Bradstreet, 61 Ill.2d 129. 334 N.E.2d 160, 164

(1975); Swider v. Yeutter, 762 F.Supp. 225, 228 (N.D.Ill. 1991).  When Resurrection

reported to the credit bureaus is subordinate to **when plaintiff became aware of the**

**defamatory statements**.  Plaintiff became aware of the defamatory statements on or

about March 20, 2007.  On this date, he received and viewed the credit reports from the

credit bureaus.  The defamatory statements were identified by plaintiff at this time.  Suit

was filed March 17, 2008, within the one year statute of limitations for defamation.

**H.    The Tortuous Interference with Prospective Economic Advantage is well**

**pled and should not be dismissed.**

To state a claim for tortuous interference in Illinois, a plaintiff must show: (i) a

reasonable expectation of entering into that relationship; (ii) defendants' knowledge of

that expectancy; (iii) an intentional and unjustified interference by defendant that caused

a termination of the expectance; and (iv) damage to the plaintiff as a result of defendant's

conduct. *Cook v. Winfrey,* 141 F.3d 322, 327 (7th Cir.1998) (discussing Illinois law).

As in Hucic, discussed previously, Plaintiff has alleged the elements of tortuous

interference. He has alleged that he had a reasonable expectation of obtaining credit (PP

72), that Defendant knowingly interfered with credit applications by publishing false

negative reports on Plaintiff's past credit (PP 73), that the interference was intentional and

unjustified (PP 74 and 75), and that Plaintiff was damaged as a result (PP 76). When the

preceding facts taken from the Complaint are taken as true, plaintiff's complaint must survive the defendant's motion to dismiss.

In <u>Tom Olesker's Exciting World of Fashion v. Dun & Bradstreet</u>, 16 Ill. App.3d 709, 306 N.E.2d 549, 553 (1st Dist. 1973), the facts supported a claim for tortuous interference with prospective business opportunity where plaintiff alleged that defendant published an erroneous credit report and consequently plaintiff was refused credit on inventory purchases from clothing manufacturers because of the latter's belief that the plaintiff's credit rating was insufficient.  See also <u>Crinkley v. Dow Jones</u>, 385 Ill.App.3d 869, 24 Ill.Dec. 573 (Appellate Court of Illinois, First Dist., Fifth Div. 1979) (none of the cases set forth the requirement  for tortuous interference that plaintiff must allege the identity of the third parties reviewing the credit report).   See Also <u>Batchelor v. First National Bank of Blue Island</u>, 1993 WL 22859 (N.D.Ill.)(court found that bank's false reports to credit agencies which bank had reason to believe would interfere with plaintiff's ability to get credit could support a claim of tortuous interference where bank reported to credit agencies that a paid loan was unpaid).

I.      **The Intentional Infliction of Emotional Distress Count Is Well Pled**

In Count VI of the Complaint, Plaintiff alleges:  1. Defendants intentionally engaged in outrageous and extreme behavior in their efforts to collect hospital debts; 2. The outrageous and extreme behavior consisted of the following:

      a.   Unreasonable, overly aggressive, atrocious, harassing, obnoxious and malicious conduct in bill collection techniques; and

b.  Uneven leverage, resources and money of the creditor Resurrection as compared to the Plaintiff, the debtor; the disparity in power unfairly caused distress.

c.  Lawless persistence in collecting debts <u>after</u> the imposed stay and discharge of the bankruptcy case;

d.  A continuance of outrageous debt collection methods and unjustified turnovers to the collection agency, ICS, who then reported the false accounts to the credit bureaus.

3.  There is a causal connection between Defendants' wrongful conduct and Plaintiff's emotional distress.

4.  Plaintiff suffered and continues to suffer severe emotional distress   Compl.  PP 78-81.

In order to recover for intentional infliction of emotional distress under Illinois law, a plaintiff must prove: (1) that the defendant's conduct was extreme and outrageous; (2) that the defendant intended to cause or recklessly or consciously disregarded the probability of causing emotional distress; (3) that he or she suffered severe or extreme emotional distress; and (4) that the defendant's conduct actually and proximately caused emotional distress.  <u>Public Finance</u>, 66 Ill. 2d at 89-90. See also <u>Doe vs. Calumet City</u>, 161 Ill. 2d 374  (1994). The plaintiff does not, however, need to establish a contemporaneous physical impact or injury. <u>Honaker v. Smith</u>, 256 F.3d 477 (7th Cir. 2000).

Here, Plaintiff alleges that Defendant intentionally or recklessly caused Plaintiff to suffer severe emotional distress by engaging in extreme and outrageous conduct. The

defendant's conduct was abusive and atrocious.  The relentless and aggressive collection procedures were outrageous.  Reporting accounts as bad when they are not is reckless. Taking Plaintiff's allegations as true, as the Court must, Plaintiff states a claim for intentional infliction of emotional distress under Illinois law. As specifically alleged in this Count VI, the Plaintiff can prove a set of facts that would support his claim.

**J.    The Negligent infliction of emotional distress is count is withdrawn.**

**K.    Fraud has been pled well.**

Defendant correctly lists the elements of fraud:  1.   A false statement of material fact; 2. the defendant's knowledge or belief that the statement was false; 3. The defendant's intent that the statement induce the plaintiff to act; 4.   the plaintiff's justifiable reliance upon the truth of the statement; 5.  damages resulting from reliance on the statement.

For purposes of a motion to dismiss, the following facts from the Complaint are taken as  true: On July 5, 2006, plaintiff was contacted by an employee of defendant by telephone.  PP 89.  Defendant informed plaintiff that the total he owed defendant for hospital services was $881.97.  Plaintiff wrote a check out for that amount that day.  PP 90.  See Exhibit A attached hereto.  This statement for fees was a false statement of material fact.

In fact, plaintiff only owed $464.52 ($365.25 for the reconciled account with the insurance company's November 25 services, (See Exhibit B attached hereto), and $99.27 for a April 16, 2006, service date, (see Exhibit C attached hereto).   The remaining $417.45 bill was for a debt that had been discharged (See Exhibit D made a part hereof).

$464.52 + $417.45 = $881.97 (the fraudulent, false statement of fact). In sum, the $881.97 was a misrepresented figure.

The defendants were aware or should have been aware that only $364.52 was owed. PP89. They had the knowledge that $417.45 had been discharged in bankruptcy: they were given notice of both the bankruptcy filing and notice of discharge. Despite this, they over charged plaintiff for services. They knew or should have known that $881.97 was a false representation of what was owed.

Furthermore, Defendant, in their gross negligence and disregard for the truth, intended plaintiff to pay more than was owed. With normal billing procedures, defendant should have been aware of the fraudulent mistake. They ignored proper accounting procedures and induced plaintiff to pay them more than was owed. PP90 This is typical behavior for a horribly managed hospital.

Plaintiff relied upon the employee of defendant that the figure was accurate. PP 91. In good faith and in reliance upon the statement by employee that $881.97 was due, plaintiff made a check out to defendant for that amount that day.

Plaintiff was aware that his debts were discharged in bankruptcy. However, plaintiff was not aware that the total amount owed to defendant (as stated by the employee on the telephone), included the $417.45 that was discharged in bankruptcy. He assumed good accounting, which was not the case. He was not aware that the total owed of $881.97 included the discharged amount. It was a good faith error on his part in the interest in paying off the defendant's total bill. This was evidenced by an overpayment of $417.45.

Contrary to the defendant's failed argument, Plaintiff cannot be charged that he did not rely upon the employee's false statement of fact that $881.97 was owed. He wanted to pay the total owed in full at that time and wrote the check that day.

Plaintiff was damaged a specific amount: $417.45. PP 93. This amount is calculated with specificity, which is an indication of the validity of the fraudulent misrepresentation. Plaintiff is able to do the math perfectly in calculating an exact money damage as a result of defendant's fraudulent statements. The supporting evidence makes clear that Fraud was committed. In conclusion, the allegations of the complaint, when interpreted in the light most favorable to the plaintiff, are sufficient to allege a cause of action for fraud.

**L.    Punitive damages are warranted**

Punitive damages may be awarded when a tort is committed with: "fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully or with such gross negligence as to indicate a wanton disregard for the rights of others, or for conduct involving some element of outrage." _Ainsworth_, at 515, 295 Ill. App.3d 644 (2d Dist.1998), _quoting Homewood Fishing Club v. Archer Daniels Midland Co._, 239 Ill. App.3d 102, 115 (1992).

A showing of malice or evil motive is not required to prove willfulness under the FCRA; rather the plaintiff must only show that the defendant knowingly and intentionally committed an act in conscious disregard for the right of the consumer. Consumer Credit Protection Act. Sec. 616, 617, as amended, 15 U.S.C.A. Sec. 1681n, 1681o. <u>Dalton v. Capital Associated Ind.</u>, 257 F.3rd 409 (4th Circuit 2001). Willful means a showing that a

furnisher knowingly and intentionally committed an act in conscious disregard for the rights of others.  Dornhecker v. Ameritech, 99 F.Supp 918 (N.D. Ill. 2000).

Defendant cites the Illinois Supreme Court case Loitz v. Remington Arms, 138 Ill. 2d 404, 415 (1990).  Defendant argues that defendant did not act "with an evil motive".  It should be noted that the Loitz the case says:  "The conduct must be outrageous, either because the defendant's acts are done with an evil motive *or because they are done with reckless indifference to the rights of others*."  Id.  Plaintiff submits that "reckless indifference" is a more lax but proper legal standard.  "Evil motive" is a term best used in film classes analyzing a classic good versus evil story.

In this case, Defendant acted with a conscious and reckless disregard for the accuracy of plaintiff's credit report statements.  Punitive damages are justified in this case when one looks at the totality of the circumstances.  The Defendant tried to collect a discharged debt; falsely invoiced plaintiff numerous times and caused ICS to contact plaintiff by mail and phone numerous times to collect discharged and paid debts; personally telephoned plaintiff to collect debts that had been paid and discharged; falsely reported three separate accounts to the credit reporting agencies; accepted an overpayment of fees; harassed plaintiff for money after an agreement had been reached for plaintiff to pay $50 a month; and generally harassed plaintiff with a reckless indifference to his patient's rights.  You would think a hospital would treat its patients with dignity, care, and concern.

Defendant's conduct is willful and wanton behavior.  This is a pattern of atrocious conduct on the part of the hospital—in a bloodthirsty and greedy manner—in pursuing discharged and paid debts.  These numerous bad acts display a conscious disregard for

the rights of the plaintiff.  Defendant should be punished for their acts to deter them from

acting this outrageously in the future. When interpreted in the light most favorable to the

plaintiff, the requests for punitive dames in plaintiff's prayer for relief, are sufficient to

warrant this type of damages.

   In <u>Voyles</u> described above, the court found defamation and tortuous interference

with prospective business relationship when a bank reported that plaintiff was delinquent

with his mortgage payments when he was not.  <u>Voyles</u> at1279.  The court also explored

the issue of punitive damages and held:


"Plaintiff last contends that the trial court erroneously denied her claim for punitive
damages. We agree. Because the trial court erroneously concluded that defendant's
conduct was not intentional, it did not consider the propriety of granting plaintiff punitive
damages. Thus, in light of our determination that defendant's conduct was intentional,
plaintiff may pursue her claim for punitive damages on remand." <u>Id</u>. at 1284.


   Although the Illinois Supreme Court has yet to determine whether punitive

damages are available as a matter of law in defamation actions, several Illinois Appellate

Courts have concluded that punitive damages are recoverable in such actions. <u>Lowe</u>

<u>Excavating Co. v. International Union of Operating Eng'rs,</u> 295 Ill.Dec. 344, 832 N.E.2d

495, 501 (2005). In addition, courts may award punitive damages under the Illinois

Consumer Fraud and Deceptive Business Practices Act. <u>Allen v. Woodfield Chevrolet,</u>

<u>Inc.,</u> 208 Ill.2d 12, 17, 280 Ill.Dec. 501, 802 N.E.2d 752 (2003).  In short, this is a case of

defamation and a violation of the Consumer Fraud Act.  While accepting all well-pled

allegations in the Complaint as true, and drawing all inferences in the plaintiff's favor on

a motion to dismiss, the facts sufficiently warrant punitive damages.

In furtherance of the potential for punitive damages in this case, consider the following fraudulent credit reporting case:  A bank reported a false charge off to the credit reporting agencies.  <u>Pan American Bank of Miami v. Osgood</u>, 383 So. 2d 1095 (Fla. Dist. Ct. App. 3d Dist. 1980).  Plaintiff received the worst possible credit rating.  The false account began to interfere with plaintiff credit transactions.    He was unable to obtain credit and his business failed.  He sued for libel and recovered a verdict for special, general ***and punitive damages***.  The facts of the case at bar resemble the facts in <u>Pan America</u>.  Thus, taking the allegations in the complaint as true, punitive damages are warranted.

## <u>CONCLUSION</u>

An attorney's legal rights have been seriously subverted.  His good name has been disparaged by a hospital's unlawful supply of false information to the credit bureaus.  The evidence will show a fantastically flawed hospital disregarding a host of statutory and common laws.  Corporations are powerful creatures.  In the pursuit of money the "little guy" is often taken advantage of.  This case should proceed to trial in the interests of justice.

WHEREFORE, Plaintiff, Joseph J. Giacalone, Jr., prays for:

        a.      a dismissal and striking of defendant's, Resurrection Hospital's motion;

        b.      leave to file an amended complaint should the first complaint be dismissed;

c.     Costs, litigation expenses, and attorneys' fees to defend this

removal issue; and

d.     such other relief as the Court may determine to be just and

equitable.

Respectfully Submitted,

By: s/Joseph Giacalone, Jr.
4304 N. Osceola Norridge, IL 60706
847-707-9000
Att. No. 35789

## CERTIFICATE OF SERVICE

I certify that I have served a copy of this document by electronic means and regular mail
to the defendants on July 14, 2008.

By: s/Joseph Giacalone, Jr.
4304 N. Osceola Norridge, IL 60706
847-707-9000
Att. No. 35789

Joseph J. Giacalone, Jr. Esq.
Giacalone & Associates, LLC
4304 North Osceola Avenue
Norridge, IL 60706
Phone:  847-707-9000
Attorney No. 35789

29

# CHASE ⬡

June 27 2006 through July 27 2006
Account Number. **000000002297922**

## IMAGES

ACCOUNT # 000000002297922



000320437833 JUL 25 #0000001191 $220.09



000720046396 JUL 06 #0000001516 $150.00



100320290125 JUL 10 #0000001517 $881.97



104710212364 JUL 27 #0000001520 $170.86

**Need more information about any of these images of cleared items?  Registered users of Chase Online see BOTH front and back of images of cleared items.  Chase Online is a free service. Visit www.Chase.com to enroll or log in.**

Page 4 of 6



**BlueCross BlueShield of Illinois**

300 East Randolph
Chicago, Illinois 60601-5099



*Explanation of Benefits (EOB).* **This is not a bill.**
**ILLINOIS COMPREHENSIVE HEALTH INS PLAN**
04-18-06

JOSEPH J GIACALONE
4304 N OSCEOLA AVE
NORRIDGE IL 60706-1149

Customer Service: 1-800-367-6410

To opt out of receiving paper copies of your
EOBs, go to Blue Access for Members at
www.bcbsil.com

**Claim Information**

| | |
|---|---|
| Member Name: | JOSEPH J GIACALONE |
| Group No.: | **PHPA** |
| Identification No.: | **XOF876015001** |
| Claim No.: | 533951740860X |
| Patient Name: | JOSEPH GIACALONE |

**SUMMARY**

| | |
|---|---|
| Total Billed: | $5988.00 |
| Total Benefits Approved: | $1461.09 |
| Amount You May Owe Provider: | $365.25 |

We reviewed this claim which was previously processed for this patient. Blue Cross and Blue
Shield has negotiated discounts with this provider. The following shows how this claim was
adjusted and how the BCBS discount (ADP) is used to help lower your out-of-pocket expenses.

**SERVICE INFORMATION**

| | Service Date | Amount Billed | Not Covered | Covered |
|---|---|---|---|---|
| RESURRECTION HEALTH CARE | | | | |
| Rm Two Beds Or More | 11-25-05 to 11-29-05 | 5000.00 | | 5000.00 |
| Laboratory Services | 11-25-05 to 11-29-05 | 16.00 | | 16.00 |
| Laboratory Services | 11-25-05 to 11-29-05 | 338.00 | | 338.00 |
| Drugs | 11-25-05 to 11-29-05 | 634.00 | | 634.00 |
| **Totals** | | **$5988.00** | **$0.00** | **$5988.00** |

**COVERAGE INFORMATION**

| | | | |
|---|---|---|---|
| **Totals** | **$5988.00** | **$0.00** | **$5988.00** |
| Discount (ADP) | | | -$4161.66 |
| **Deductions** | | | |
| Your Coinsurance Amount | | $365.25 | |
| **Total Deductions** | | | -$365.25 |
| **Total Benefits Approved** | | | **$1461.09** |
| **Amount You May Owe Provider** | | | **$365.25** |

Total covered benefits approved for this claim: $1,461.09 to RESURRECTION HEALTH CARE on
04-18-06.

*B*

*A Division of Health Care Service Corporation. A Mutual Legal Reserve Company. An Independent Licensee of the Blue Cross and Blue Shield Association*

*(turn over)*    Page 1 of 3

233,537        002573
00093.0304

**Resurrection Health Care®**

Resurrection Medical Center
7435 W. Talcott Ave
Chicago, IL 60631

stomer Service: 1 (866) 261-3292
ours 8:00 AM to 8:00 PM, Monday through Thursday and 8:00 AM to 5:00 PM on Friday

ed a payment option or charity care information? Please contact our
stomer service number listed above.

lecesita una opción de pago o informes acerca de cuidado caritativo? Favor
comunicarse con servicios al cliente al numero indicado arriba.

---

IF PAYING BY CREDIT CARD PLEASE FILL OUT BELOW

☐ ☐ ☐ ☐          CHECK CARD TO BE
                  USED FOR PAYMENT

| CARD NUMBER | | AMOUNT |
|---|---|---|
| SIGNATURE | | EXP. DATE |

| STATEMENT DATE | PAY THIS AMOUNT | ACCOUNT NUMBER |
|---|---|---|
| 05/04/2006 | 99.27 | 0610300433 |

PATIENT NAME

JOSEPH J GIACALONE

---

JOSEPH J GIACALONE
4304 N OSCEOLA AVE
NORRIDGE, IL 60706-1149

lıllıllıllıllıllıllıllıllıllıllıllıllı

lıllıllıllıllıllıllıllıllıllıllıllıllıllıll

Resurrection Medical Center
PO Box 220281
Chicago, IL 60622-0281

Please check box if above address is incorrect or insurance
information has changed, and indicate change(s) on reverse side.

**STATEMENT**

PLEASE DETACH AND RETURN TOP
PORTION WITH YOUR PAYMENT

May 04, 2006

**Patient:**     JOSEPH J GIACALONE                    **Date of Service:**     04/13/06

**Account:**     0610300433

**Amount Due:**     99.27

Thank you for selecting Resurrection Medical Center for your health care services on 04/13/06. We are committed to providing you with the highest quality of care, and to your overall satisfaction with Resurrection Health Care.

Your insurance company has processed our claim for the services referenced above. At this time, your balance is $99.27. **If you think you may have difficulty paying this bill and would like information regarding payment options, financial assistance or charity care, please call our Customer Service Representatives at 1 (866) 261-3292 between the hours of 8:00 AM to 8:00 PM, Monday through Thursday and 8:00 AM to 5:00 PM on Friday.** If you are able to pay your bill in full, please do so at this time.

Should you have any questions or concerns regarding this statement, please do not hesitate to call us at 1 (866) 261-3292 between the hours of 8:00 AM to 8:00 PM, Monday through Thursday and 8:00 AM to 5:00 PM on Friday.

Again, thank you for choosing Resurrection Medical Center. We hope to serve you again the next time health care needs arise.

Sincerely,

Resurrection Medical Center, Patient Financial Services







## ICS
### COLLECTION SERVICE

ESTABLISHED 1940

*PO Box 646, Oak Lawn IL 60454-0646*

March 30, 2006

**ACA**
INTERNATIONAL
The Association of Credit
and Collection Professionals

DEBTOR:       JOSEPH GIACALONE
CREDITOR:     SAINT JOSEPH HOSPITAL
CREDITOR #:   0506800589
ICS ACCT. #:  8221570
INCURRED:     03/14/05
T/O DATE:     08/00/05
AMOUNT DUE:   $417.45

## NOTICE OF PLACEMENT

We are writing to inform you that Illinois Collection Service, Inc. has been retained by Resurrection Health Care to process your account. This is a standard procedure of Resurrection Health Care to provide you an opportunity to address your outstanding balance. This account has been placed with our office for collection. Please remit the balance in full to our office to avoid further collection action.

Illinois Collection Service, Inc.
M. Langle

Contact your representative direct at (708) 229-7437 Ext. 5811.

Include ICS Acct. # 8221570 on all correspondence.

This communication is from a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

To manage your account, and make payments Online, please visit our website at www.ics-collection.com and click on "Debtor Login". Your access code is "1.7198162.465"

A $25.00 fee will be assessed on any checks returned by your bank.

### SEE REVERSE SIDE FOR IMPORTANT INFORMATION

6ONILLI131001

***Detach Lower Portion***

## ICS
### COLLECTION SERVICE

ESTABLISHED 1940

I.C.S., INC
PO Box 646
Oak Lawn IL 60454-0646
RETURN SERVICE REQUESTED

March 30, 2006

ILLINOIS COLLECTION SERVICE INC
PO Box 646
Oak Lawn IL 60454-0646

8221570-1001   133714   21265

Joseph Giacalone
4304 N Osceola Ave
Norridge IL 60706-1149

ICS ACCT. # 8221570
AMOUNT: $ 417.45
Acct. Rep.: M. Langle