IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEPH J. GIACALONE, JR. | ) |
| Plaintiff, | ) |
| v. | ) Case No. 08-CV-2670 |
| | ) Hon. George M. Marovich |
| RESURRECTION MEDICAL CENTER and ILLINOIS COLLECTION SERVICE, INC., | ) Mag. Judge Susan E. Cox |
| Defendants. | ) |

**RESURRECTION MEDICAL CENTER'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

**INTRODUCTION**

In his twenty-four page response to Resurrection Medical Center's ("Resurrection") motion to dismiss (the "Response"), Plaintiff Joseph J. Giacalone, Jr. ("Plaintiff"), an attorney acting *pro se*, withdraws two claims and relies on overturned or inapposite cases. Plaintiff's Response also fails to refute the arguments made in Resurrection's Opening Brief as to why each claim should be dismissed with prejudice. Therefore, Resurrection respectfully requests that this Court dismiss the Complaint in its entirety.

**ARGUMENT**

**I.   PLAINTIFF'S RESPONSE SHOULD BE STRICKEN BECAUSE IT VIOLATES THIS COURT'S LOCAL RULE 7.1.**

As a preliminary matter, the Response should be stricken because—at twenty-four pages—it violates this Court's 15-page limit for all briefs as set forth in Local Rule 7.1. *See* N.D. ILL. LOC. R. 7.1.

II. **COUNTS I, IV, V AND VIII SHOULD BE DISMISSED BECAUSE THEY ARE PREEMPTED BY THE FAIR CREDIT REPORTING ACT.**

A. **Plaintiff's Claims for Violation of the Illinois Consumer Fraud Act (Count I), Tortious Interference (Count V), and Fraud (Count VIII) are Preempted by Section 1681t of FCRA.**

In his Response, Plaintiff argues that Section 1681t(b)(1)(F) of the Fair Credit Reporting Act ("Section 1681t") does not preempt his tort claims and that "the 7th Circuit held that FCRA did not completely preempt state law claims for defamation and violations of the [Illinois Consumer Fraud and Deceptive Business Practices Act]." (Response at pp. 8–9.) Plaintiff's arguments ignore the express statutory language of Section 1681t and Section 1681h(e) ("Section 1681h(e)") of the Fair Credit Reporting Act ("FCRA"), as well as the several cases from this district that address FCRA's preemptive effect.

Plaintiff relies upon *Miller v. Wells Fargo*, No. 3:05-CV-42-S, 2008 WL 793676 (W.D. Ky Mar. 24, 2008). In doing so, Plaintiff must concede that Section 1681t preempts Count I, which purports to bring a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), because in *Miller v. Wells Fargo* the court held that Section 1681t preempted the plaintiff's claim for alleged violations of the Kentucky Consumer Protection Act (which is nearly identical to the ICFA). *See Miller*, 2008 WL 793676, at *7–8; *compare* 815 ILL. COMP. STAT. 505/1 *et seq. with* KY. REV. STAT. § 367.110 *et seq.*

Moreover, beyond the fact that *Miller* has no binding authority on this court, it expressly contradicts the cases decided in this district that Section 1681t preempts tort and statutory claims that fall within the purview of Section 1681s-2 of FCRA, which governs the duties and responsibilities of furnishers of information to credit agencies. *See Hukic v. Aurora Loan Services, Inc.*, No. 05-C-4950, 2007 WL 2563363, at *11 (N.D. Ill. Aug. 31, 2007) (holding that the plaintiff's tortious interference with prospective economic advantage claim was preempted

2

by FCRA when the tort claim was predicated upon alleged "intentional and unjustified reports to credit agencies that interfered with [the plaintiff's] prospective third-party relationships with prospective lenders."); *see also Brown v. Bank One Corp.*, No 01-C-4698, 2002 WL 31654950, at *3 (N.D. Ill. Nov. 22, 2002) (dismissing a claim brought pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act, finding that it was preempted by FCRA."). Accordingly, Plaintiff's reliance on *Miller* is misplaced.

Plaintiff also relies upon *King v. Retailer's Nat'l* Bank, 338 F. Supp. 2d 913 (N.D. Ill. 2005) to argue that the "the 7th Circuit held that FCRA did not *completely preempt* state law claims for defamation and violations of the [ICFA]." (Response at pp. 8–9) (emphasis added). As an initial matter, *King* is not a Seventh Circuit decision. Moreover, that case is distinguishable from the present action because the doctrine of complete preemption is not at issue in this case. In *King*, the plaintiff brought two state law claims (defamation and violation of the ICFA) against the defendant in state court, and the defendant sought to remove the action to federal court. *King*, 388 F. Supp. 2d at 915. In doing so, the defendant argued that the well-pleaded complaint rule did not apply and federal jurisdiction existed because FCRA completely preempted state law claims. *Id*. The court rejected that argument, however, explaining that complete preemption should not be "confused with conflict preemption, which is a defense to the merits of a claim and not a basis for federal jurisdiction." *Id*. The court then simply held that the matter (in which plaintiff only asserted state claims) was improperly removed because there was no basis for federal jurisdiction under the doctrine of complete preemption exception to the well-pleaded complaint doctrine. *Id*. at 916–17. Accordingly, *King* is not relevant to this case.

Here, Plaintiff has not refuted that Count I (brought under the ICFA), Count V (tortious interference with prospective economic advantage), and Count VIII (fraud) are predicated upon

3

allegations that fall with the purview of Section 1681s-2 of FCRA and, as such, are preempted by Section 1681t. (*See* Cplt. ¶¶ 35, 37, 44–46, 50-52, 74–76 & 87.) Accordingly, these claims should be dismissed with prejudice.[1]

### B.  Plaintiff's Defamation Claim (Count IV) is Pre-empted by Section 1681h(e) of FCRA.

In response to Resurrection's argument that Section 1681h(e) of FCRA ("Section 1681h(e)") pre-empts his claim for defamation, Plaintiff concedes that his defamation claim is pre-empted unless he can show that Resurrection acted with malice. (*See* Response at p. 9.) He erroneously argues, however, that the Complaint sets forth sufficient allegations of malice.

The term "malice" is defined as "[t]he *intent*, without justification or excuse, to commit a wrongful act; reckless disregard of the law or of a person's legal rights." BLACK'S LAW DICTIONARY (8th ed. 2004) (emphasis added). In this case, Plaintiff has not set forth any allegations supporting the inference that Resurrected intended, without justification or excuse, to commit a wrongful act, or that it acted recklessly in disregard of Plaintiff's legal rights. Rather, if anything, Plaintiff merely alleges that Resurrection was mistaken in its billing of Plaintiff for certain accounts. Accordingly, Plaintiff's defamation claim is preempted by Section 1681h(e).

### III.  EACH OF PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR OTHER REASONS.

### A.  Count I (ICFA) Fails Because He Cannot Establish that He Justifiably Relied on Any Alleged Deceptive Acts and the Complained of Conduct Was Not Unfair.

As set forth in greater detail in Resurrection's Opening Brief, Plaintiff's ICFA claim fails because he admittedly did not rely to his detriment upon Resurrection's alleged deceptive acts

---

[1]  Plaintiff withdraws Count II, which alleged that Resurrection violated the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA"), 815 ILL. COMP. STAT. 510/1 *et seq.* (*See* Response at p. 8, n. 1.) Based on the withdrawal of the claim, as well as the reasons set forth in Resurrection's Opening Brief, Count II should be dismissed with prejudice. Similarly, Plaintiff abandons any allegations that his fraud claim (Count VIII) is predicated upon Resurrection's reporting of false information. (*See* Response at pp. 23–25.) Nevertheless, to the extent his fraud claim is based upon such allegations, it too is preempted by Section 1681t.

and the complained of conduct was not unfair. In his Response, Plaintiff does not dispute the legal basis of Resurrection's argument; instead, he contends that (i) he was, in fact, deceived by Resurrection's alleged reporting of his unpaid bills to Illinois Collection Services, Inc. ("ICS"); and (ii) that Resurrection's actions in attempting to collect a debt were unfair. Neither of those arguments is availing.

First, Plaintiff argues that he was deceived because:

> He had faith in [Resurrection's] abilities to see their error *and accept his urgings that the debt had been discharged* . . . The Plaintiff relied on the competence of defendant. He relied on the promise that the discharged debt would not appear on his credit reports.
>
> Moreover, he relied on [Resurrection's] representations that the debt for $2138 would be reconciled and processed. *He informed them that he was insured at the time*.
>
> Plaintiff was deceived by [Resurrection] into believing that they would follow Illinois Consume [*sic*] Fraud laws and not report false information to the credit bureaus . . . He trusted [Resurrection] to not engage in illegal and undermining behavior.

(*See* Response at p. 13 (emphasis added); *see also* Cplt. ¶¶ 10, 13, 14–17, 20, 22, 23 & 26.)

Plaintiff admits that he did not rely upon any alleged deceptive acts because he knew the purported truth and disputed that he owed any amounts to Resurrection. Accordingly, his ICFA claim fails because he did not rely upon any of Resurrection's alleged deceptive acts. *See Gros v. Midland Credit Mgmt.*, 525 F. Supp. 2d 1019, 1025 (N.D. Ill. 2007) (citing *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100 (2005)) (dismissing an ICFA claim where plaintiff averred that he disputed the debt and, therefore, admitted that he was not actually deceived).

Plaintiff further argues, relying solely upon *Daley v. Datacom, Inc.*, 176 Ill. App. 3d 697 (1st Dist. 1988), that Resurrection's actions were unfair. (Response at pp. 14–15.) *Datacom* is inapposite to the present action. In that case, the Cook County State's Attorney filed an action

5

against Datacom, Inc., which had contracted with the City of Chicago to collect unpaid parking tickets, for alleged violations of the ICFA. *Datacom, Inc.*, 176 Ill. App. 3d at 699–700. In attempting to collect the unpaid tickets, Datacom sent notices to delinquent payers that instructed recipients to pay the "total amount due," which constituted the fine, a mailing fee, and court costs. *Id.* at 702. However, the law did not permit Datacom to attempt to collect a mailing fee and court costs. *Id.* at 702–03. In holding that the State's Attorney's complaint sufficiently set forth a claim under the ICFA, the court relied upon the fact that consumer interests were sufficiently at stake because Datacom mailed false demand notices to several hundred thousand people and the State's Attorney has broad powers to enforce the act. *See id.* at 30–32.

This case, unlike in *Datacom*, does **not** implicate expansive consumer protection concerns in which a party mailed decidedly false demand notices to several hundred thousand people. Moreover, this case is **not** being prosecuted by the State's Attorney, which was acting to protect the interests of those hundreds of thousands of consumers. Furthermore, Plaintiff does not allege that Resurrection included additional fees and costs that were not actually owed; rather, taking Plaintiff's allegations as true, Resurrection simply attempted to collect bills from one person for valid services rendered. Finally, unlike in *Datacom*, Plaintiff does not recite any allegations that he—let alone consumers as a whole—suffered any substantial injury. Accordingly, Resurrection's conduct was not "unfair" within the meaning of the ICFA.

Therefore, independent from the fact that Plaintiff's ICFA claim is preempted by FCRA, it also fails because Plaintiff admits that he was not deceived and Resurrection's conduct in attempting to collect payment for valid medical services rendered was not unfair.

**B.    Count III (Fair Credit Reporting Act) Should Be Dismissed Because Plaintiff Lacks Standing.**

In his Response, Plaintiff does *not* dispute that he lacks standing to bring a private cause of action under Section 1681s-2(a) of FCRA. Instead, Plaintiff argues that consumers have standing to bring a private cause of action under Section 1681s-2(b) of FCRA. (*See* Response at pp. 16–17.) Plaintiff's argument is irrelevant because it ignores the specific allegations of his Complaint and the fact that Sections 1681(a) and 1681(b) govern entirely different conduct.

In his Complaint, Plaintiff expressly alleges that "Resurrection is a furnisher [of information]" (Cplt. ¶ 52) that "reported false information to ICS and the credit bureaus." (Cplt. ¶ 51). Plaintiff asserts that in reporting this information, Resurrection violated ***Section 1681s-2(a) of FCRA***. (Cplt. ¶ 50.) Section 1681s-2(a) relates to the furnishing of information, whereas Section 1681s-2(b) of FCRA relates to correcting information once a furnisher receives notice from the credit bureaus of a dispute. *Compare* 15 U.S.C. § 1681s-2(a) (governing duties of furnishers of information to provide accurate information to credit reporting agencies) *with* 15 U.S.C. § 1681s-2(b) (governing duties of furnishers of information upon receiving notice of a dispute from the credit reporting agency).

Moreover, Plaintiff does not, and cannot, refute that he lacks standing to bring a claim under Section 1681s-2(a). *See* 15 U.S.C. § 1681s-2(c); *see also* 15 U.S.C. § 1681s-2(d) (violations of Section 1681s-2(a) "shall be enforced exclusively . . . by the Federal agencies and officials and the State officials identified in section 1681s of this title."). Thus, Plaintiff's argument that he has standing to bring a claim under Section 1681s-2(b) is irrelevant and Count III should be dismissed.

    **C.    Count IV (Defamation) Should Be Dismissed Because Plaintiff Has Not Pled Actual Damages With Particularity and, Alternatively, a Substantial Portion of the Claims Are Barred by the 1-Year Statute of Limitations.**

        *1.    Plaintiff Has Not Pled Actual Damages With Particularity.*

In his Response, Plaintiff admits that to bring a claim for defamation *per quod*, he must allege actual damages with particularity. (*See* Response at p. 18.) Plaintiff relies upon *Voyles v. Sandia Mortgage Corp.*, 311 Ill. App. 3d 649 (2d Dist. 2000), however, to argue that he has met that burden by setting forth conclusory allegations that he suffered damages in the form of "loss of credit, refusal to extend credit . . . an impaired good name [and emotional distress]." (*See* Response at 18.)[2] Plaintiff once again ignores the case law and the allegations of his Complaint.[3]

As an initial matter, *Voyles v. Sandia Mortgage Corp.*, 311 Ill. App. 3d 649 (2d Dist. 2000) was reversed by the Illinois Supreme Court and, as such, is no longer good law. Moreover, in that case, the appellate court examined the evidence adduced at trial, and determined that the plaintiff sufficiently proved damages based upon the fact that Citibank denied her refinancing on her mortgage. *Voyles*, 311 Ill. App. 3d at 653. Accordingly, *Voyles* has no bearing on whether Plaintiff properly pled damages with particularity in his Complaint.

Moreover, Plaintiff ignores the litany of cases dismissing defamation claims when the complaint merely sets forth conclusory allegations of harm. *See, e.g., Gros*, 525 F. Supp. 2d at 1026–27 (dismissing defamation claim against a company who allegedly falsely reported credit information when plaintiff only made general allegations of out-of-pocket losses and emotional

---

[2]    Plaintiff further argues that Resurrection fails to attack "critical facts" of his defamation claim. (*See* Response at p. 18.) Given that Resurrection filed a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), allegations of fact set forth in the Complaint are taken as true. The fact is that Plaintiff failed to plead the necessary elements to state a claim.

[3]    Plaintiff encourages this Court to consider general propositions such that inaccuracies in credit information lower a person's credit score and loss of credit is an actual damage. (*See* Response at p. 19.) Although Resurrection disputes the accuracy of those statements, they are irrelevant because Plaintiff has failed to plead ***any*** facts with particularity showing that ***he*** suffered actual damages.

distress); *see also Dry Enterprises, Inc. v. Sunjut AS*, No. 07-C-1657, 2008 WL 904902, at *8, n. 1 (Mar. 31. 2008) (stating that plaintiff did not adequately plead actual damages with particularity when the complaint only alleged that "plaintiffs have also suffered special damages in the form of financial loss . . . relating to, among other things, customers and goodwill."); *Taradash v. Adelet/Scott-Fetzer Co.*, 260 Ill. App. 3d 313, 318 (1st Dist. 1993) ("[g]eneral allegations of damages, such as damages to an individual's health or reputation or general economic loss, are insufficient to state a claim of defamation *per quod*."). Accordingly, as the case law is clear that Plaintiff's generalized and unsubstantiated allegations are insufficient to allege actual damages with particularity, Plaintiff's defamation claim should be dismissed.

### 2. *Plaintiff's Defamation Claim is Substantially Barred by the 1-Year Statute of Limitations.*

As set forth in greater detail in Resurrection's Opening Brief, Plaintiff's defamation claim against Resurrection is predicated upon allegations that Resurrection reported false accounts to ICS on the following dates: July 8, 2005 (Cplt. ¶ 9); August 8, 2005 (Cplt. ¶ 12); July 28, 2006 (Cplt. ¶ 21); July 31, 2006 (Cplt. ¶¶ 46 & 64); and July 2, 2007 (Cplt ¶ 47). Plaintiff contends, however, that "[w]hen Resurrection reported to the credit bureaus is subordinate to when plaintiff became aware of the defamatory statements." (Response at p. 20.) Once again, Plaintiff's argument ignores the express allegations in his Complaint, which repeatedly alleges that Resurrection placed his accounts for collection with ICS, and then ICS—*not Resurrection*— reported that information to the credit bureaus. (*See* Cplt. ¶¶ 10, 17, 21, 28, 61, 64 & 65.)

Moreover, the Complaint explicitly avers that Plaintiff had knowledge of each time that Resurrection allegedly placed the accounts for collection for ICS. (*See id.* at ¶¶ 7–10, 12–16, 21, 61, 62 & 64.) Accordingly, Plaintiff's argument that he did not have knowledge of ICS's reporting of the information to the credit bureaus until March 20, 2007 is irrelevant to his

9

defamation claim against Resurrection, which is allegedly based upon Resurrection's placement of the accounts at issue with ICS. Given that Plaintiff had knowledge of Resurrection's alleged placement of each account prior to March 17, 2007 (with the exception of the July 2, 2007 report to ICS), Plaintiff's defamation claim is substantially barred by the one year statute of limitations. *See* 735 ILL. COMP. STAT. 5/13-201.

      **D.**    **Count V (Tortious Interference with Prospective Economic Advantage) Should Be Dismissed Because Plaintiff Has Not Plead Facts Supporting Any Element of the Claim.**

In his Response, Plaintiff argues that the Complaint adequately pleads the elements of a tortious interference with prospective economic advantage claim because the Complaint sets forth conclusory allegations that "he has a reasonable expectation of obtaining credit (PP 72) [*i.e.*, Cplt. ¶ 72], that Defendant knowingly interfered with credit applications by publishing false negative reports on Plaintiff's past credit (PP 73), that the interference was intentional and unjustified (PP 74 and 75), and that Plaintiff was damaged as a result (PP 76)." (Response at p. 20.) Plaintiff does not address or otherwise attempt to distinguish *Schaffner v. U.S. Bank, N.A.*, No. 02-C-8062, 2004 WL 783352, at *2 (N.D. Ill. Jan . 20, 2004), in which the court dismissed a claim for tortious interference where the complaint contained identical conclusory allegations. Instead, Plaintiff relies upon three inapposite cases, one of which has been reversed, to argue that he need not allege *any* facts supporting the elements of a tortious interference claim.

Plaintiff first cites *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*, 16 Ill. App. 3d 709 (1st Dist. 1973), which also was reversed by the Illinois Supreme Court. *See Tom Olesker's Exciting World of Fashion, Inc.*, 61 Ill. 2d 129 (1975). Moreover, that case is inapplicable to the present action because the issue before the court was whether plaintiff's tortious interference claim was time barred. *Tom Olesker's Exciting World of Fashion, Inc.*, 16 Ill. App. 3d at 714. In addressing that particular issue, the appellate court merely held that the

10

plaintiff's claim was not time barred. *Id.* Furthermore, that case did not address the sufficiency of plaintiff's claim because that plaintiff set forth particularized allegations relating to its attempts to purchase inventory on credit, but was denied those purchases. *Id.* at 711. As such, not only is the case bad law, it is also inapplicable.

Plaintiff also cites *Crinkley v. Dow Jones & Co.* to support his argument that he need only assert conclusory allegations to support his claim. *Crickley* is also inapposite. In that case, the court dismissed the plaintiffs' tortious interference claim because "they did not allege facts which showed that defendants acted with the purpose of interfering with defendant's prospective economic advantage." *Crinkley v. Dow Jones & Co.*, 67 Ill. App. 3d 869, 880 (1st Dist. 1978). Accordingly, *Crickley* is unavailing to Plaintiff and actually support's Resurrection's arguments because Plaintiff, like in *Crickley*, fails to allege that Resurrection acted with the purpose of interfering with defendant's prospective economic relations.

Similarly, Plaintiff's reliance on *Batchelor v. First Nat'l Bank of Blue Island* is misplaced. In *Batchelor*, the plaintiff (a lay-person acting *pro se*) specifically alleged that when she sought to purchase a vehicle, but was denied credit from the financing company due to a false credit report submitted by the defendant. *Batchelor v. First Nat'l Bank of Blue Island*, No. 92-C-5073, 1993 WL 225859, at *1 (N.D. Ill. Jan. 20, 1993). Based on those allegations, the court noted that the plaintiff may proceed on a claim for tortious interference. *Id.* at *5. Importantly, notwithstanding the fact that the plaintiff was a lay person appearing *pro se*, she set forth allegations relating to a specific instance in which she was denied credit from a particular automobile seller. Unlike in *Batchelor*, in this case, Plaintiff simply avers generally that he was denied credit without setting forth **any** facts in support. As such, *Batchelor* is inapposite.

11

Plaintiff's claim for tortious interference is nothing more than a hollow shell—he fails to plead he had a reasonable expectation of entering into a valid business relationship with any particular financial institutions that extend credit; that Resurrection had knowledge of any such expectancy; that Resurrection directed any alleged tortious conduct at third parties with whom Plaintiff claims to have had an expectancy—*i.e.*, financial institutions that extend credit to customers; or that Resurrection acted with malice. Plaintiff's conclusory, unsubstantiated allegations cannot survive a motion to dismiss. *See Schaffner*, 2004 WL 783352, at *2; *see also Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1995, 1959 (2007) (the complaint must contain factual allegations sufficient to "raise a right to relief above the speculative level . . .").

### E. Count VI (Intentional Infliction of Emotional Distress) Should Be Dismissed Because Resurrection's Conduct Was Not Extreme and Outrageous.

Plaintiff argues that his claim for intentional infliction of emotional distress should not be dismissed because he alleged that Resurrection engaged in "unreasonable, overly aggressive, atrocious, harassing, obnoxious and malicious conduct" in attempting to collect from Plaintiff for legitimate medical services. (Response at pp. 21–22).[4] The Complaint, however, simply avers that Resurrection did nothing more than send Plaintiff collection letters and contact Plaintiff on occasion. That conduct is ***not*** extreme and outrageous as a matter of law. *See Public Finance Corp. v. Davis*, 66 Ill. 2d 85, 94 (1977).

In *Davis*, the Illinois Supreme Court considered the conduct of a creditor attempting to collect a debt. *See generally id*. In that case, the Complaint set forth the alleged conduct in length, including that the defendant (i) called plaintiff several times weekly, frequently more

---

[4] Plaintiff withdraws Count VII, in which Plaintiff purported to bring a claim for negligent infliction of emotional distress. (Response at p. 23.) Given that Plaintiff withdraws this claim, as well as the arguments set forth in Resurrection's Opening Brief that Resurrection did not owe a duty to Plaintiff, Count VII should be dismissed with prejudice.

12

than once a day; (ii) went to plaintiff's home one or more times a week; and (iii) induced the plaintiff to write a bad check, and then phoned an acquaintance of the plaintiff to say that she was writing bad checks. *Id.* at 91.

Notwithstanding those extensive allegations, the Illinois Supreme Court held the "conduct alleged is not of such an extreme and outrageous nature as to constitute a basis for recovery under [an intentional infliction of emotional distress claim]." *Id.* The court went on to explain that, although "[t]here can be no doubt that conduct of the employees of Public Finance disturbed Davis and possibly caused her emotional distress . . . count I contains no allegation of extreme and excessive conduct." *Id.* at 94. Therefore, the court dismissed the claim.

As in *Davis*, in this case, Plaintiff complains that Resurrection attempted to collect payment for legitimate medical services by sending Plaintiff letters and calling him on a few occasions. (*See* Cplt. ¶¶ 8, 9, 17, 18, 22–24 & 33.) That alleged conduct falls well short of the conduct alleged in *Davis* and, as such, is ***not*** extreme and outrageous as a matter of law.

      **F.**     **Count VIII (Fraud) Should Be Dismissed Because Plaintiff Cannot Establish Justifiable Reliance When He Allegedly Knew the Truth.**

In his Response, Plaintiff abandons any argument that Resurrection's alleged "false representations of material fact regarding Plaintiff's payment history to the credit bureaus and numerous financial institutions" constitutes a fraud claim. (*See* Response at pp. 23–25.) Instead, Plaintiff argues that Resurrection defrauded him because it billed him $881.97, when $417.45 of that amount was allegedly discharged in bankruptcy.[5] (*Id.*) Notably, Plaintiff does not dispute that if he had knowledge of the truth, he cannot state a claim for fraud. Instead, Plaintiff argues

---

[5] With respect to Resurrection's argument that Plaintiff cannot bring a cause of action to enforce alleged violations of the automatic stay in this Court, Plaintiff responds that none of his claims are brought to address alleged violations of the stay but that those allegations form the basis for his other claims. (Response at 16.) Nevertheless, to the extent Plaintiff now or hereafter purports to allege a violation of the automatic stay, his claim is barred because it must be brought in the United States Bankruptcy Court. *See Halas v. Platek*, 239 B.R. 784, 792 (N.D. Ill. 1999) (holding that bankruptcy courts have exclusive jurisdiction to adjudicate issues regarding violations of the automatic stay).

that, although "Plaintiff was aware that his debts were discharged in bankruptcy . . . [he] was not aware that the total amount owed to defendant (as stated by the employee on the telephone), included the $417.45 that was discharged in bankruptcy." (Response at 24.)

In this case, the Complaint alleges that Resurrection billed Plaintiff for $881.97—yet, Plaintiff admits he knew that $417.45 of that amount was allegedly discharged in bankruptcy. As such, he was fully aware of all the facts relating to the charge—including the allegedly discharged debt and the services he received at Resurrection—and he, therefore, cannot establish justifiable reliance.

Moreover, if Plaintiff did not know that the $881.87 included the allegedly discharged debt, his fraud claim still fails because ordinary diligence (*i.e.*, a simple question as to what the charges related to) would have revealed the truth. *See, e.g., Central States Joint Board v. Continental Assurance Co.*, 117 Ill. App. 3d 600, 607 (1st Dist. 1983) ("[i]n determining whether reliance was reasonable, all of the facts which plaintiff had actual knowledge of, as well as all of those it might have learned if it had used ordinary prudence, must be taken into account; if ample opportunity existed to discover the truth, then reliance is not justified."); *see also Brayton Chemicals, Inc. v. First Farmers State Bank of Minier*, 671 F.2d 1047, 1052 (7th Cir. 1982) ("[t]he rule in Illinois is that a party is not justified in relying on representations when he has ample opportunity to ascertain the truth of the representations before he acts and fails to do so."). As such, Plaintiff's fraud claim should be dismissed.

IV.  **PLAINTIFF'S CLAIMS FOR PUNITIVE DAMAGES MUST BE DISMISSED BECAUSE THE COMPLAINT FAILS TO ALLEGE THAT RESURRECTION ACTED WITH AN EVIL MOTIVE.**

Plaintiff does not dispute that punitive damages are not favored in Illinois or that they are only appropriate in cases involving conduct that is tantamount to a crime. *Loitz v. Remington*

*Arms Co., Inc.*, 138 Ill. 2d 404, 414 (1990).  Instead, Plaintiff argues that Resurrection acted with a "reckless indifference" to his rights.  (*See, e.g.,* Response at pp. 26–27.)

Plaintiff alleges that Resurrection violated the automatic bankruptcy stay (*see, e.g.,* Cplt. ¶¶ 4–9, 33, 34, 37, 38, 45, 61, 62, 74, 79 & 83); failed to reconcile a bill with his health insurance plan (*see id.* at ¶ 17); and placed a bill for collection that was purportedly paid (*see id.* at ¶ 19).  Taking these allegations as true, they simply establish that Resurrection mistakenly attempted to collect debts that were either legally discharged or valid but not reconciled with a third party, or that Resurrection mistakenly placed a paid account for collection.  None of those acts engenders the kind of outrage typical of a crime; rather, assuming that these allegations are true, they were (if anything) mere mistakes.  *Loitz*, 138 Ill. 2d at 415 ("punitive damages are not awarded for mere inadvertence, mistake, errors of judgment and the like, which constitute ordinary negligence.").  Thus, Plaintiff's demand for punitive damages should be dismissed.

## CONCLUSION

Plaintiff, an attorney appearing *pro se*, fails to set forth any cognizable claim against Resurrection.  Therefore, the Complaint should be dismissed in its entirety.

Dated: July 29, 2008	Respectfully submitted,

RESURRECTION MEDICAL CENTER

    /s/  Steven D. Hamilton
One of Its Attorneys

Edwin E. Brooks
Steven D. Hamilton
MCGUIREWOODS LLP
77 West Wacker Drive, Suite 4100
Chicago, IL 60601
(t) 312-849-8100
(f) 312-849-3690

*Attorneys for Resurrection Medical Center*

## **CERTIFICATE OF SERVICE**

      I, Steven D. Hamilton, an attorney, hereby certify that on July 29, 2008, I caused a copy of the foregoing *Resurrection Medical Center's Reply Memorandum in Support of Its Motion to Dismiss* to be filed with the Court's electronic filing system.  Parties may access this document through that system.  Additionally, I hereby certify that I caused copy of the same to be served via First Class U.S. Mail, postage prepaid, at 77 West Wacker Drive, Suite 4100, Chicago, IL 60601, upon the following people:

Joseph J. Giacalone, Jr.
Giacalone & Associates, LLC
4304 N. Osceola Ave.
Norridge, IL 60706

                                          /s/  Steven D. Hamilton

\6425573.2